# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JAMES OWENS, et al.**
      **Plaintiffs**

      **v.**                                     **Civil 01:02244 (JDB)**
                                                   **Judge John D. Bates**

**REPUBLIC OF SUDAN, et al.**
      **Defendants**

## MOTION TO STRIKE THE REPUBLIC OF SUDAN'S MOTION TO DISMISS

Plaintiffs move that the Motion to Dismiss of the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan be stricken. A Motion to Dismiss pursuant to Federal Civil Rule 12 may not be considered by this Court until and unless the Default entered by Order of the Court is vacated.

In support of this motion, the Plaintiffs rely upon those matters set forth in the Memorandum of Points and Authorities which follows.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

Once a default has been entered against a defendant that party must apply to the Court for relief before a responsive pleading can be received. As described by the Supreme Court of New Mexico:

---

[1] This submission is in the form required by the ECF system instructions with the Motion and Memorandum of Points and Authorities submitted in one document.

> It is clear that a party in default for failure to plead or otherwise defend the action must apply to the court for relief under Rule 55(c) before he can plead in the cause. 3 Barron & Holtzoff, Federal Practice and Procedure, § 1212; 6 Moore's Federal Practice, § 55.03; Loew's, Inc. v. Sanfrebob Theatre Corp., supra; Orange Theatre Corp. v. Rayherstz Amusement Corp., supra; Moffitt v. Asher (Ky.1957), 302 S.W.2d 102.

Federal Civil Rule 12(h)(3) provides that subject matter jurisdiction may be raised at any time, presumably without setting aside a default. As indicated below in this memorandum, this Court clearly has subject matter jurisdiction.

The actions of the moving defendants demonstrate contempt for the procedural rules of this Court which might be expected of a terrorist state.[2] A brief review of the history would be in order. (See Affidavit of Thomas Fortune Fay attached to this Motion). This action was filed on October 26, 2001. After the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan did not return service by mail of the Summons, Complaint, Notice of Suit and translations of these documents into Arabic, application was made to this Court for leave to serve process by diplomatic means, which application was granted. On January 10, 2003, pursuant to Order of this Court, the same process was directed to Colin Powell, Secretary of State, by submission to his designate, Edward A. Betancourt. See Court file. On February 25, 2003 the Embassy of the United States in Khartoum, Sudan carried out service upon these Defendants. See Embassy of the United States transmittal letter in Court file. On March 28, 2003, Counsel for the Plaintiffs received a telephone call from Mr. Alier Deng, Minister of Sudan stationed at the Embassy of Sudan, Washington, D.C., acknowledging receipt of process and informing Counsel that the Republic of the Sudan and the Ministry of the Interior of the

---

[2] Sudan was designated as a state sponsor of terrorism on August 12, 1993 by Warren Christopher, Secretary of State because it had "repeatedly provided support for acts of international terrorism." It has to date never been removed from the list of state sponsors of international terrorism.

Republic of the Sudan had retained attorneys to represent them in this action. (See Affidavit of Thomas Fortune Fay attached to this Motion, Exhibit A). As indicated in the Affidavit submitted with this Motion, because Mr. Deng was uncertain of dates of service, Counsel for Plaintiffs informed Mr. Deng by mail of these dates, telling Mr. Deng also that a request for entry of default would be filed on May 6, 2003, requesting him to have the attorneys for these Defendants contact Fay and Perles if they needed additional time. (Affidavit, Exhibit B). On April 8, 2003, Mr. Deng again contacted Counsel for Plaintiffs and again was told that the Plaintiffs would consent to an extension of time to file a responsive pleading upon request. (Affidavit, Exhibit A).

On June 26, 2003, Counsel for Plaintiffs was contacted through the mail by B. Donovan Picard, Esq. of Piper Rudnick (Affidavit, Exhibit C). Because Counsel for Plaintiffs was uncertain as to the purpose of Mr. Picard's letter, a response was sent to him. (Affidavit, Exhibit D). Mr. Picard responded by telephone to the letter attached as Exhibit D as indicated in Exhibit E. Counsel for Plaintiffs has to date received no other communication from Mr. Picard or anyone else indicating the purpose of the communications from Mr. Picard.

On May 9, 2003 the Clerk, sua sponte, entered a default against the Defendant, Republic of Sudan. (Affidavit, Exhibit F). Also on May 9, 2003, the Clerk, sua sponte, entered defaults against the Islamic Republic of Iran and the Iranian Ministry of Information and Security. On May 8, 2003, this Court entered an Order finding all Defendants in default and further providing that the Order be translated into Farsi and Arabic and sent to the appropriate Defendants. A copy of the Order was sent by the Clerk of Court to Mr. Alier Deng at the Embassy of Sudan.

The records shows without contradiction that the Defendants, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan, had notice of this action and the consequences of making no answer to it no less than four times prior to entry of the Order of Default (2/25/03 by service of process, 3/28/03 by telephone, 3/28/03 by mail, 4/8/03 by telephone) and, by this Counsel, Piper Rudnick, twice more after default. (6/26/03 by mail, 11/6/03 by telephone). Despite this no appearance was entered by either of these Defendants until a year, less 20 days, after they had received notice of the action, and nearly 10 months after time had expired per the summons issued by this Court. In the meantime, trial preparations by the Plaintiffs have gone forward. Approximately twenty five depositions of liability and damages witnesses have been completed.

Five weeks after entering an appearance, on March 10, 2004, Sudan filed a motion to dismiss which further requests that the Court vacate the default against both the Republic of Sudan and the Ministry of Interior of the Republic of Sudan, entered by the Court on May 8, 2003. The papers filed by Sudan did not include a verified answer in accordance with Local Rule 7.1(g) which reads as follows: "A motion to vacate entry of default . . . shall be accompanied by a verified answer." The Memorandum in support of the Motion of Defendants recognizes that the Default must be vacated before the Court may consider the Motion to Dismiss it has filed. See page 2 of Defendants Motion.[3]

The Courts have set forth a number of factors to be considered in determining whether to set aside a Default including the following:

---

[3] Sudan argues that pursuant to Local Rule 1.1(a), the local rules should be construed with the Federal Rules of Civil Procedure to allow the filing of a Fed. R. Civ. P. 12(b) motion without an accompanying verified answer. "A motion to vacate entry of default . . . shall be accompanied by a verified answer." Local Rule 7.1(g). A need for harmony can not eclipse the explicit requirements of the Local Rules.

    (A) Was the default willful or culpable?

    (B) Did the defaulting party act promptly to correct the default?

    (C) Is there a meritorious defense?

    (D) Is there prejudice to the opponent?

    (E) Was the default merely a good faith mistake?

    (F) What explanation is given for the default?

    (G) What amount is in controversy in the action?

    (H) What alternative sanctions are available?

    (I) Does the default produce a harsh or unfair result?

## WILLFUL OR CULPABLE

The conduct of the Defendants moving to vacate the Order of Default entered in this case, in the popular vernacular, is in a class by itself. The failure to make any reply to the process served upon them cannot be explained by a problem with communication, all documents were translated into Arabic and were understood without difficulty by Alier Deng, the Defendants Minister. It cannot be explained as a problem in obtaining counsel, indeed the Defendants stated without equivocation that they had retained counsel more than five weeks prior to the date of default. It cannot be explained as a situation in which additional time was required for investigation and analysis of the case, the Plaintiffs offered to consent to an extension of time to file an answer. This conduct by the Defendants can only be explained as evidence of their contempt for the processes of this Court. Under the standard described by the Second Circuit in SEC v. McNulty, 137 F.3d 732 (1998), cert. denied, 525 U.S. 931 (1998) the Defendants action cannot be considered to be mere negligence, but must be viewed by the Court as willful or culpable.

CORRECTIVE ACTION

Having ignored the contents of the process served upon them, having failed to take note of either the warning by Counsel for Plaintiffs of the consequences of failing to respond and having spurned the generosity of the Plaintiffs in offering to consent to an extension of time, under no circumstances could these defendants be deemed to have acted promptly to correct the default. To the contrary, their actions invited the entry of default and they should not now be heard to complain when justice has been done. Lacy v. Sitel Corp, 227 F.3d 290 (5th Cir. 2000).

MERITORIOUS DEFENSE

The Defendants have failed to set forth any defense on the facts, restricting themselves to Affidavits from two individuals who were apparently under the impression that it is necessary that the Plaintiffs prove prior knowledge of the terrorist attacks by the agents of these Defendants for the Plaintiffs to sustain their claim for damages. This is not the case.  28 U.S.C. Section 1605 (a)(7), provides for liability of a terrorist state which provides material support for the terrorist actor. It does not require prior knowledge. Action sustaining the terrorists in their enterprise is sufficient. As the United States Court of Appeals for the District of Columbia noted with approval in Bettis v. Islamic Republic of Iran, 315 F.3d 325 (2003):

> "The District Court found that, because of Iran's material support for Hizbollah's hostage taking and torture, the terrorism exception stripped Iran's immunity from suit." Id at 330.

(D.C.Cir. 2003). The "material support" nexus has been held to be sufficient to sustain a criminal conviction based upon terrorist action. United States v. Meskini, 319 F.3d 88, 186 A.L.R. Fed. 599 (2 Cir. 2003).

The affidavits submitted by the Sudan carefully evade any mention of "material support" by the Sudan, not surprising in view of Sudan's continuing activity as a facilitator of terrorism by others as well as an actor in its own name in the attempted extermination of its non-Muslim population. As noted by Reuters on just last Friday:

> "We have a vicious war going on which is leading to the violation of human rights on a scale comparable to historic situations, increasingly for example Rwanda," Mukesh Kapila, U.N. humanitarian coordinator for Sudan, told reporters. Reuters, 3/19/2004 by Katie Nguyen.

The failure the Defendants, Republic of Sudan and the Ministry of the Interior of the Sudan, to set forth a defense under the statute is covered in more detail in the Memorandum In Opposition To the Defendants Motion to Dismiss. The contents of that Memorandum are incorporated by reference into this Memorandum.

PREJUDICE TO THE PLAINTIFFS

The Plaintiffs have taken approximately 16 de bene esse depositions to date. Upon request of the moving Defendants, all of these would have to be re-scheduled resulting in additional costs to the Plaintiffs. The Sudan continues to the present to be a terrorist state with continuing close ties to Iran, the Iranian Ministry of Information and

all over the world. Witnesses deposed in this action with representatives of the Sudan and the Ministry of the Interior of the Sudan present have every reason to be apprehensive about their safety. The opportunity for these Defendants to intimidate witnesses must be viewed against the backdrop of Sudan's continuing program of genocide described by the United Nations resident coordinator for Sudan as "the world's greatest humanitarian crisis…."[5]  It is anticipated that several depositions will be taken by the Plaintiffs outside of the United States. The presence of agents of the Sudan at these depositions presents issues of safety for witnesses and counsel. Vacating the default entered against the Sudan and the Ministry of the Interior of the Sudan will clearly result in prejudice to the Plaintiffs.

GOOD FAITH MISTAKE

The record detailed above contains no hint that the actions of these Defendants were merely a good faith mistake. As the Court in KPS and Associates, Inc. v. Designs by FMC, Inc., 318 F.3d 1 (1 Cir. 2003), noted in sustaining the District Court in refusing to set aside a default:

> We have noted before that "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir.1989) (quoting Wyle v. R.J. Reynolds Indus., 709 F.2d 585, 589 (9th Cir.1983)); see also id. (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). 318 F.3d 1 at 15.

informed by Counsel for the Plaintiffs. They had counsel. The only possible explanation is a lack of respect for the American judicial system.

EXPLANATION FOR DEFAULT

These Defendants have given no explanation for the default.

AMOUNT IN CONTROVERSEY

The ad damnum amounts in this action total $ 1,058,000,000.00 in compensatory damages and $ 1,000,000,000.00.

ALTERNATIVE SANCTIONS

Exclusion of the Defendants, Sudan and the Ministry of the Interior of the Sudan, with respect to depositions yet to be taken from the physical presence of deponents requiring the Defendant's Counsel's participation to be by telephone coupled with acceptance of depositions already taken without supplemental depositions of those witnesses already deposed would be considered by the Plaintiffs as an alternative sanction.

HARSH OR UNFAIR RESULT

Denying the request of Sudan and the Ministry of the Interior of the Sudan to

## SUBJECT MATTER JURISDICTION

The procedure followed by the Courts in reviewing an assertion by a sovereign nation that it does not come within an FSIA exception and that the Court thereby lacks subject matter jurisdiction, is described succinctly in Gates v. Victor Fine Foods, 54F.3d1457 (9 Cir. 1995) as follows:

> As an agency or instrumentality of a foreign state, Alberta Pork is entitled to immunity unless it falls into one of the Foreign Sovereign Immunities Act's exceptions to immunity. Once a plaintiff offers evidence that an Act exception applies, the party claiming immunity bears the burden of proving by a preponderance of the evidence that the exception does not apply. Joseph v. Office of Consulate General of Nigeria, 830 F.2d 1018, 1021 (9th Cir.1987), cert denied, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988).

The United States Court of Appeals for the District of Columbia Circuit in Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (2002), set forth the procedure for the District Court in determining whether the factual basis exists to satisfy the jurisdictional requirement as follows:

> "Libya contends that the District Court erred in assuming the truth of the factual allegations in plaintiffs' complaint for purposes of determining whether it had subject matter jurisdiction. Appellant correctly points out that in Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C.Cir.2000), we held that when a foreign state defendant raises "a dispute over the factual basis of the court's subject matter jurisdiction under the FSIA," the trial court is required to 'go beyond the pleadings and resolve any disputed issues of fact the resolution *91 **293 of which is necessary to a ruling upon the motion to dismiss.'
> Libya now claims that it did not engage in the actions described in plaintiffs' complaint. Thus, it contends that we must reverse the District Court's finding of subject matter jurisdiction and remand for further fact- finding on that issue. See Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 448-49 (D.C.Cir.1990) (holding that where the "conclusory allegations" in a plaintiff's complaint are challenged by a sovereign defendant, "the district court

> When reviewing a plaintiff's unchallenged factual allegations to determine whether they are sufficient to deprive a foreign state defendant of sovereign immunity, we assume those allegations to be true. Foremost-McKesson, 905 F.2d at 440 n. 3. Thus, where the defendant contests only the legal sufficiency of plaintiff's jurisdictional claims, the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief. See Browning v. Clinton, 292 F.3d 235, 241-42 (D.C.Cir.2002). A claimant need not set out all of the precise facts on which the claim is based in order to survive a motion to dismiss. Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C.Cir.1983). 294 F.3d 82 at 93.

A comparison of the requirements pursuant to 28 U.S.C. Section 1605(a)(7) with the allegations of the Complaint filed by the Plaintiffs is in order. The elements of the waiver are:

> 1. Money damages constitute the relief requested.
>
> 2. Personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act, if such act was engaged in by an official, employee or agent of such state, within the scope of his or her office, employment or agency.
>
> 3. The foreign state has been designated as a state sponsor of terrorism.
>
> 4. The claimant or the victim is a national of the United States.

Referring to the Complaint[6], each element is indicated:

> 1. "Plaintiff, James Owens, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of TEN MILLION DOLLARS ($10,000,000.00), besides costs." Page 8, Count I. Each and every count requests money damages.

Nairobi the American Embassy was attacked through detonation of materials being transported by truck including a gas enhanced explosive device. The Iranian Ministry of Information and Security, the Iranian agents of the Defendants in operational control of Hezbollah operated with high level technical expertise in the use of explosives which would not have been available in the absence of Iranian participation. The Ministry of the Interior of the Republic of the Sudan provided cover and protection for the organization and training of the persons carrying out the attack as well as venues for these activities.

(10) The actions of the agents of the Defendants as above set forth constituted acts of torture, extrajudicial killing and the provision of material resources for these acts as defined in Section 2339A, Title 18, United States Code." Pages 6-7, paragraphs 9-10.

"The actions of the agents of the Defendants as above set forth constituted acts of torture, extrajudicial killing and the provision of material resources for these acts as defined in Section 2339A, Title 18, United States Code." Page 7, paragraph 10.

3."The Defendants, the Islamic Republic of Iran and the Republic of Sudan, are foreign states which were at the time of the acts hereinafter complained of and are to the present designated as state sponsors of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 United States Code Appendix, Section 2405(j))." Page 5, paragraph 3.[7]

4. "The Plaintiffs above described were, at all times relevant to this Complaint, American Nationals as that term is defined in section 101(a)(22) of the Immigration and Nationality Act. Page 4, paragraph 2.

In filing eight exhibits including affidavits with the Motion to Dismiss the Defendants seek to proceed in a manner which might be deemed a "bastardized" motion for summary judgment, carefully evading compliance with Local Rule 7(h). The alternative to this procedure is to determine the jurisdictional question on the pleadings

discretion to permit extrinsic materials. Counsel respectfully suggests to the Court that a rule applicable to all parties defining the scope of extrinsic materials in reasonably certain terms in the exercise of the Court's discretion under Civil Rule 12 (c) is needed. The absence of such a rule raises the specter of the Court enduring two complete trials of a complicated case requiring depositions across the world. Failure of the Court to permit jurisdictional discovery may constitute an abuse of discretion where facts bearing on jurisdiction are controverted. Sizova v. National Institute of Standards and Technology, 282 F.3d 1320 (10 Cir. 2002).

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court strike Sudan's Motion to Dismiss, or in the alternative, treating that document as a Motion Vacate the entry of default by this Court, that the Motion be denied, and for such other and further relief as may be just and proper..

Respectfully submitted,

| | |
|---|---|
| Thomas fortune Fay_____ | Steven R. Perles_____ |
| Thomas Fortune Fay | Steven R. Perles |
| D.C. Bar No. 23929 | Perles Law Firm, P.C. |
| 601 Pennsylvania Ave., N.W. | D.C. Bar No. 326975 |
| #900 – South Building | 1615 New Hampshire Ave., N.W. |
| Washington, D.C.  20004 | Washington, D.C.  20009 |
| | (202)745-1300 |

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2004, a copy of the foregoing was served via the United States District Court's ECF filing system, to:

> John F. Dienelt, Esq,
> Don C. Lewis, Esq.
> Piper Rudnick
> 1200 - 19th Street, NW
> Washington, DC 20036-2412

> Thomas Fortune Fay_____
> Thomas Fortune Fay

## LOCAL CIVIL RULE 7(m) STATEMENT

Thomas Fortune Fay, Attorney for Plaintiff, herewith certifies in accordance with United States District Court for the District of Columbia Local Rule 7(m) that the foregoing Motion has been the subject of discussion with counsel for all opposing parties and that the Motion is opposed.

> Thomas Fortune Fay_____
> Thomas Fortune Fay