# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**JAMES OWENS, et al.**
                    **Plaintiffs**


                    **v.**                                    **Civil 01:02244 (JDB)**
                                                              **Judge John D. Bates**


**REPUBLIC OF SUDAN, et al.**
                    **Defendants**


### MOTION TO DISQUALIFY COUNSEL FOR THE REPUBLIC OF SUDAN

Pursuant to District of Columbia Rule of Professional Conduct R. 1.7, Plaintiffs, James Owens, et al., file this motion to disqualify counsel for the Republic of Sudan and the Interior Ministry of the Sudan (collectively "Sudan").  In support of this motion, Mr. Owens refers the Court to the attached Memorandum of Points and Authorities.

WHEREFORE, Plaintiffs pray that the Motion be granted and that the Court enter an Order of disqualification of counsel for Sudan.

Respectfully submitted,


Thomas Fortune Fay____                    Steven R. Perles_____
Thomas Fortune Fay                        Steven R. Perles
D.C. Bar No. 23929                        Perles Law Firm, P.C.
601 Pennsylvania Ave., N.W.               D.C. Bar No. 326975
#900 – South Building                     1615 New Hampshire Ave., N.W.
Washington, D.C.  20004                   Washington, D.C.  20009
(202) 589-1300                            (202)745-1300


Dated:  March 22, 2004

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAMES OWENS, et al.
          Plaintiffs

      v.                           Civil No.1:01CV02244
                                  Judge John D. Bates

REPUBLIC OF SUDAN, et al.
          Defendants

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF MOTION FOR DISQUALIFICATION OF COUNSEL FOR THE
### REPUBLIC OF THE SUDAN

### SUMMARY

The United States District Court for the District of Columbia is the birthplace of litigation under 28 U.S.C. § 1605(a)(7); the venue where over 90% of such litigation transpires; and, with the D.C. Circuit, has been the court where all questions and outstanding issues regarding such litigation have been and continue to be asked and answered.  Litigation under § 1605(a)(7) and central statutes that define it under a decade old; such litigation continues to evolve at an explosive rate as the courts continue to define these statutes.  Therefore, proceedings in § 1605(a)(7) cases in this U.S. district court where novel issues are raised set critically important precedent and are certain to define such litigation in all other cases in this U.S. district court, as well as in all other districts in the country.

Counsel for the Republic of Sudan ("Sudan") are employed by Piper Rudnick, LLP, ("Piper") a law firm located in Washington D.C.  Piper also currently represents a group of

families of 19 deceased U.S. servicemen and women.[1]  The two cases, one involving Sudan,

Owens v. Islamic Republic of Iran, and one on behalf of the victims and their families, Heiser v.

Islamic Republic of Iran, are both before the same court, the United States District Court for the

District of Columbia.

In both cases, Piper has submitted briefing on behalf of its respective clients on an

unsettled area of law that will surely result in adverse precedent for one of its two separate groups

of clients, either a state sponsor of terrorism or the victims of the state sponsor of terrorism.

The presiding judge in both Owens v. Islamic Republic of Iran and Heiser v. Islamic

Republic of Iran required briefing from the parties on the effect of the recent decision handed

down by the D.C. Circuit Court in Cicippio-Puleo v. Islamic Republic of Iran.  353 F.3d 1024

(D.C. Cir. 2004).  Presumably, all trial court judges presiding over cases brought under 28 U.S.C.

§ 1605(a)(7) have asked for similar briefing due to the importance of the Cicippio-Puleo decision

and the significance of its effect upon several unsettled questions of law, critical to the resolution

of § 1605(a)(7) cases.

In the briefing submitted in the Heiser case, on behalf of the family members of the slain

of U.S. servicemen and women, Piper argued:

> It (the Cicippio-Puleo decision) left open the possibility that plaintiffs may pursue
> private causes of action arising from other sources of law, including § 1606 or
> state law in actions against foreign states. . . . The common law claims of wrongful
> death, survival action, economic damages, intentional infliction of emotional
> distress, loss of consortium, and solatium are conventional common law torts and
> do not arise from the Flatow Amendment.  Consequently, Plaintiffs' claims against
> Defendants Iran, MOIS, and IRGC, are unaffected by the Cicippio-Puleo decision.

(See attached Heiser Memorandum at 8).

---

[1]   The families of 19 United States servicemen and women murdered during the Khobar Towers suicide bombing
brought wrongful death and personal injury actions against the Islamic Republic of Iran and Iranian intelligence
services.  Heiser v. Islamic Republic of Iran, No. 00-2329 (D.D.C.); Campbell v. Islamic Republic of Iran, No. 01-
2104 (D.D.C.). In addition to the 19 deaths, hundreds were injured.

In the briefing submitted in this case, on behalf of Sudan, Piper argues that:

- no common law claims are allowed against foreign sovereigns under § 1605(a)(7);

- state common law claims are preempted by federal regulation under the Flatow Amendment and § 1605(a)(7);

- domestic common law can not govern the conduct of foreign persons on foreign soil;

- subject matter jurisdiction does not exist under 28 U.S.C. §1605(a)(7) because it is an unconstitutional delegation from Congress to the Executive branch, it violates the Equal Protection clause to the United States Constitution, and it is unconstitutionally vague;

- and the political question doctrine prevents this Court from exercising jurisdiction.

(See Owens Defendant Sudan Memorandum to dismiss).

Piper's simultaneous representation of the Plaintiffs and Defendants in § 1605 (a)(7) cases comes at a unique time—a moment of creation—in the evolution of the precedential case law for such litigation.  Case law on the above issues under the FSIA is non-existent.  Should this Court find for the Sudan on any of the above issues, the ruling would provide persuasive authority against Piper's clients in the Heiser case.  While Piper couches some of its arguments in the Motion to dismiss in Owens to imply that the arguments would only apply to the facts of the Owens case, the resulting precedent would be applicable to the Heiser case as well.  This will be one of the first cases where several outstanding and critically important issues in the post-Cicippio-Puleo world of § 1605(a)(7) litigation will form the basis of a trial court opinion.  Additionally, Piper raise issues of first impression in its motion to dismiss that would destroy the subject matter jurisdiction of all US courts to hear cases under § 1605(a)(7), including the Heiser case.

I.      Counsel's representation of both victims of state sponsored terrorism and state
        sponsors of terrorism in litigation under 28 U.S.C. § 1605 will unavoidably result
        in harm to at least one of its own clients.

    A.      Positional conflicts such as the one before the Court require a knowing
            waiver from all clients involved.

Counsel for Sudan has a significant ethical conflict due to the inconsistent positions advocated during its simultaneous representation of both a state sponsor of terrorism and the victims of a state sponsor of terrorism in cases brought under 28 U.S.C. § 1605(a)(7).  The first of the two inconsistent positions to be adopted will create adverse, persuasive authority for whichever client loses the race to a decision.[2]  A lawyer[3] may not represent a client where that representation will exert an adverse affect upon its representation of another client.

> [A] lawyer shall not represent a client with respect to a matter if . . . (2) such representation will be or is likely to be adversely affected by representation of another client; (3) representation of another client will be or is likely to be adversely affected by such representation; . . . .

District of Columbia Rule of Professional Conduct R. 1.7.[4]  "Clients are entitled to counsel who are dedicated, without conflict, to their interests. The Rules of Professional Conduct are grounded on this basic premise."  Barnes ex rel. Estate of Barnes v. District of Columbia, 266 F.Supp. 2d 138, 141 (D.D.C. 2003).  Both the Heiser and Owens clients are both exposed to a significant risk of substantial harm by the briefing submitted on behalf of the other.  "[T]he lawyer may not, without informed consent of all parties, accept simultaneous representation of both clients where

---

[2] Piper submitted its briefing on behalf of the victims in the Heiser matter on January 2004 and its briefing on behalf of Sudan on March 10, 2004.

[3]  Violations of the District of Columbia Rules of Professional Conduct by individual attorneys at a large law firm, such as Piper are imputed to the entire law firm.  "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 . . . ."  District of Columbia Rule of Professional Conduct R. 1.10.

[4] The District of Columbia Rules of Professional Conduct state that Rule 1.3 regarding a lawyer's duty, and therefore the law firm's duty, to never "[p]rejudice or damage a client during the course of the professional relationship" does not enlarge the obligations of a lawyer under Rule 1.7.  However, in a circumstance, such as the one before the Court where a law firm simultaneously represents two clients in the same court with mutually antagonistic positions, it is clear that faithful discharge of the law firm's duties under Rule 1.3 will lead to a conflict under Rule 1.7.

such representation creates a substantial risk that representation of one client will adversely effect

the representation of the other."  District of Columbia Bar Legal Ethics Committee Formal Op.

265 (1996) (concluding simultaneous, inconsistent positions before the same trial court can

trigger ethical obligations and require knowing waiver under the District of Columbia Rules of

Professional Conduct).  The first court to rule will provide persuasive authority for the benefit of

Piper's opposing counsel in the matter that finishes the race second.

The simultaneous, inconsistent positions argued by Piper create a positional conflict that

requires the knowing waiver of all clients involved.  Piper cannot at one time both seek to build

up the rights of litigants under §1605(a)(7) and seek to utterly destroy all rights of litigants under

§1605(a)(7).  Lawyers cannot represent clients where the representation requires the advocacy of

simultaneous, inconsistent positions.  Fiandaca v. Cunningham, 827 F.2d 825 (1st Cir. 1987);

Estates Theatres, Inc. v. Columbia Pictures Indus., Inc., 345 F. Supp 93 (S.D.N.Y. 1972).

Positional conflicts in unrelated matters are recognized as ethical conflicts under Rule 1.7 of the

District of Columbia Rules of Professional Conduct.   District of Columbia Bar Legal Ethics

Committee Formal Op. 265 (1996).

> B.   The conflict before the court will create an adverse effect upon one of
> Piper's two clients.

Positional conflicts implicate four areas of concern:  1) when a lawyer' arguments create

precedent that affects the outcome in another case involving another of the lawyer's clients; 2) a

potential breach of the lawyer's duty of confidentiality to one or both of the clients; 3) the client's

expectations of loyalty; and 4) the interests of the legal system and society.  John S. Dzienkowski,

Positional Conflicts of Interest, 71 Tex. L. Rev. 457, 496 (1993).  Three of these factors are

potentially at issue in this case,

1.   Piper's two arguments have a great likelihood of creating adverse precedent for one of its two clients.

There is a real danger that Piper will, either in this case or in the Heiser case, create a precedent that will directly and adversely impact another Piper client.  The D.C. Circuit issued the Cicippio-Puleo opinion on January 16, 2004.  353 F.3d 1024.  It directly overrules several trial court decisions and its ruling implicates several issues of great importance that are paramount in both the Heiser and the Owens case.  The single most important issue is the availability of common law actions against a foreign state under § 1605(a)(7).  Piper's clients in Heiser argue that there are common law actions against a foreign state under § 1605(a)(7).   The Legal Ethics Committee for the District Columbia Bar has identified five factors with which to judge the presence of an adverse effect and therefore a conflict.  District of Columbia Bar Legal Ethics Committee Formal Op. 265 (1996).  The Committee analyzed 1) the relationship between the two forums in which the two representations occur; 2) the centrality in each matter of the legal issue as to which the lawyer will be asked to advocate; 3) the directness of the adversity between the positions on the legal issue of the two clients; 4) the extent to which the clients may be in a race to obtain a ruling; and 5) whether a reasonable observer would conclude that the lawyer would be likely to hesitate in either of her representations or to be less aggressive on one client's behalf because of the other representation.  Id.  The focus should be directed on the actual harm that "may befall one or both clients."  Id.

Utilizing the framework of analysis provided by the District of Columbia Bar Legal Ethics Committee when it analyzed another positional conflict, it is immediately apparent that the ethical conflict before the court could not be more serious.  1) Both cases are in the United States District Court for the District of Columbia, most single most important venue for defining the rights of litigants under § 1605(a)(7).  2) The conflict is created by inconsistent positions advocated by

Piper that are central to the resolution of the two cases.  3) The inconsistent positions could not be more directly adverse to one another.  4) There is a race to obtain a ruling.  Should Piper chose to employ its formidable legislative resources to support the reduction of state sponsored terrorism victims' rights in favor of Sudan, there would be an additional, irrefutable conflict. Dzienkowfki, Positional Conflicts of Interest, 71 Tex. L. Rev. at 498-501.

> 2.      There is a potential for breaches of client confidentiality.

Situations may arise where counsel for Sudan might use confidential client information from the Heiser case to gain an advantage against Mr. Owens.  Mr. Owens and the Heiser clients employ some of the same expert witnesses.  Sudan may try to use information on the expert obtained by Piper in its representation of the Heiser clients in cross examination or other attempts to discredit Mr. Owens's case.  Further, if Sudan discredits Mr. Owens' expert, this might weaken the case of the Heiser clients where their case relies upon the same experts' opinions

> 3.      The Heiser clients' expectations of loyalty and the interests of the legal system and society weigh against allowing Piper to represent both groups of clients.

The simultaneous representation of clients with direct and opposing interests in the same district court at such a critical and unique time taints the legal system and would dismay the Heiser clients.  The Court is duty bound to protect against the damage that is wrought by ethical conflicts and their unseemly appearance.  "Some courts have at times held that the appearance of impropriety is sufficient in itself to disqualify counsel."  See e.g.,  Kessenich v. Commodity Futures Trading Com'n, 684 F.2d 88 (D.C. Cir. 1982).  As Piper argues that victims of terrorism have the ability to bring common law causes of action against the states that sponsor the acts wherein the victims are injured, Piper simultaneously argues in a coordinate trial court in the same district for a position that would leave its clients with no rights under § 1605(a)(7).

> In evaluating whether a violation of the Code of Professional Responsibility has occurred and whether this violation warrants disqualification, it is appropriate to consider the specific societal interests at stake. 'A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel.'

Id. at 97 (quoting from Woods v. Covington County Bank, 537 F.2d 804, 810 (5th Cir. 1976)).

Society has an important interest in maintaining the perception of the fair dispensation of justice by its courts and the legal process. Unconflicted counsel is a critical ingredient for the fair dispensation of justice. "[T]he confidence and respect of the community towards its bench and bar" are at risk when conflicting positions are advocated by the same attorney, to the detriment of his or her clients. Estates Theatres, Inc. v. Columbia Pictures Indus., Inc., 345 F. Supp 93, 99 (S.D.N.Y. 1972). The public's belief in the fairness and justness of the courts and the legal process that comprise such a large part of the civil society under which they live their lives is compromised when confronted with situation as is before the Court. Sudan's briefing not only directly contradicts the entire Memorandum submitted by Piper in the Heiser case (see attached), but argues for a position that would deny subject matter jurisdiction for all cases brought under § 1605(a)(7), including the case brought by Piper's Heiser clients.

## II.     THE REMEDY FOR OPPOSING COUNSEL'S ETHICAL VIOLATION IS DISQUALIFICATION.

The Court's vantage point for this ethical conflict is not prospective, thus, disqualification is the only remedy if Piper cannot obtain consent from all the clients affected by the conflict. A lawyer should decline representation if there is a potential for a conflict with adverse effects for the lawyer's current clients. "A lawyer is required to decline employment 'if the exercise of his independent professional judgment . . . would be likely to involve him in representing differing interests [unless] it is obvious that he can adequately represent the interest of each [client] and . . .

each consents to the representation after full disclosure'". Hendry v. Pelland, 73 F.3d 397, 401 (D.C.Cir. 1996); BCCI Holdings (Luxembourg), S.A. v. Clifford, 964 F.Supp. 468, 481 (D.D.C. 1997). "Sometimes the conflict is so likely to occur and so serious if it does occur that counsel may not undertake the representation that creates the conflict." In re Austrian and German Bank Holocaust Litigation, 317 F.3d 91, 103 (2d Cir. 2003). Piper has already undertaken representation of one client and created an ethical conflict that requires disclosure and full and knowing waiver from all clients involved or disqualification. Kessenich v. Commodity Futures Trading Com'n, 684 F.2d 88, 94 (D.C. Cir. 1982). In addition to disqualification, clients whose interests are adversely affected may have a claim for breach of fiduciary duty. Hendry v. Pelland, 73 F.3d 397, 401 (D.C. Cir. 1996); Resolution Trust Corp. v. Gardner, 788 F.Supp. 26 (D.D.C. 1992).

This Court is the appropriate decision maker for the resolution of this ethical issue. A United States District Court is empowered to supervise the attorneys before it in accord with the relevant ethical standards, including the jurisdiction's rules of professional conduct. "[T]he district court bears responsibility for supervising the members of its bar and its exercise of this supervisory duty is discretionary, . . . ." See e.g., Groper v. Taff, 717 F.2d 1415, 1418 (D.C. Cir. 1983). Ethical conflicts and the pleading for their resolution may be properly raised by opposing counsel even though he is not representing the injured client. Kevlik v. Goldstein, 724 F.2d 844, 848 (1st Cir. 1984); United States v. Clarkson, 567 F.2d 270 (4th Cir. 1977), Brown & Williamson Tobacco v. Daniel Int'l Corp., 563 F.2d 671 (5th Cir. 1977). The ethical obligations of counsel for Mr. Owens require them to report ethical conflicts. See District of Columbia Rule of Professional Conduct R. 8.3.

The balance of relevant factors supports Piper's disqualification to remedy the ethical conflict before the Court.

> In considering a motion to disqualify, the District Court is charged with evaluating all the relevant circumstances and evidence . . . The standards for disqualification are somewhat amorphous, but the trial court is bound to make its determination taking into account all relevant factors: [T]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

Palumbo v. Tele-Communications, Inc.  157 F.R.D. 129 (D.D.C. 1994) (quoting from Allen v. Academic Games League of America, Inc., 831 F.Supp. 785, 789 (C.D. Cal.1993)).  The burden upon Sudan to find a new lawyer is minimal while the harm to Piper's other clients as well as the legal system is immediate and dire.

This is not a case where a lawyer is threatened with disqualification in the middle of trial and whose indigent client has already spent his life saving on the representation over a period of years.  This case is still in a preliminary stage thus requiring Sudan to find new counsel will impose a minimal burden.  There are numerous counsel in this city that have the capacity and enthusiasm to take on this case while lacking the ethical conflict presented by Piper's representation of the victims of the Khobar Towers suicide bombing.  Sudan will have its choice of first class law firms.  Sudan is an oil and gas rich sovereign nation; the financial burden will be minimal.

The fair dispensation of justice is a cornerstone of our society and sets our legal system and our country apart from many others in the world.  Piper's simultaneous representation of victims of state sponsored terrorism and state sponsors of terrorism, even without any attendant breaches of client confidentiality, creates an ethical conflict  in the post-Cicippio-Puleo setting. It would be dismaying for the Heiser clients to read the briefing submitted on behalf of Sudan.  It

will directly and immediately damage their interests should the Court adopt the arguments

embodied in that briefing.[5]


## CONCLUSION

For the reasons listed above, plaintiffs respectfully request this court disqualify counsel

for the Sudan.

Respectfully submitted,


Thomas Fortune Fay\_\_\_\_   Steven R. Perles_____
Thomas Fortune Fay     Steven R. Perles
D.C. Bar No. 23929     Perles Law Firm, P.C.
601 Pennsylvania Ave., N.W.   D.C. Bar No. 326975
#900 – South Building    1615 New Hampshire Ave., N.W.
Washington, D.C.  20004    Washington, D.C.  20009
(202) 589-1300      (202)745-1300



Dated:  March 22, 2004

---

[5] Mr. Owens vigorously opposes Sudan's Motion to dismiss and disputes the validity of all arguments contained therein.  Upon resolution of the ethical conflict that demands the Court's attention prior to resolution of the Motion to dismiss, Mr. Owens will submit a Memorandum in opposition to the Motion to dismiss.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of March, 2004, a copy of the foregoing was served

via the United States District Court's ECF filing system, to:

> John F. Dienelt, Esq,
> Don C. Lewis, Esq.
> Piper Rudnick
> 1200 - 19th Street, NW
> Washington, DC 20036-2412

<u>Thomas Fortune Fay</u>
Thomas Fortune Fay

<u>EXHIBIT</u>

IN THE UNITED STATES DISTRICT COURT
FOR THIS DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ESTATE OF MICHAEL HEISER, ET AL., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 00-CV-02329 (TPJ) (DAR) |
| | ) | |
| ISLAMIC REPUBLIC OF IRAN, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ESTATE OF MILLARD D. CAMPBELL,  )
EL AL.,                                                    )
                                                                )
Plaintiffs,                                           )
                                                                )
v.                                                          )          Case No. 01-CV-02104 (TPJ) (DAR)
                                                                )
ISLAMIC REPUBLIC OF IRAN,              )
ET AL.,                                                  )
                                                                )
Defendants.                                       )
                                                                )

(Consolidated)


## MEMORANDUM IN RESPONSE
## TO COURT ORDER DATED JANUARY 20, 2004

Plaintiffs, by their counsel, submit this Memorandum pursuant to the Court's Order dated

January 20, 2004. The Memorandum addresses the relevance of Cicippio-Puleo v. Islamic Republic of

Iran, 2004 WL 66771 (D.C. Cir. January 16, 2004) (hereinafter, the "CicippioPuleo" decision or

opinion), to Plaintiffs' claims asserted in these consolidated cases.

ARGUMENT

I.    THE CICIPPIO-PULEO DECISION DOES NOT BAR THE HEISER-
      CAMPBELL CASES.

The limited holding in the Cicippio-Puleo decision does not bar Plaintiffs' claims against

Defendants, the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security

("MOIS"), and the Iranian Islamic Revolutionary Guard Corps ("IRGC"). Application of the

Cicippio-Puleo decision to the instant actions extinguishes only those claims against Defendants

grounded solely in the Flatow Amendment, 28 U.S.C. 1605 note. Plaintiffs' Second Amended

Complaints name and set forth common law claims for wrongful death, survival action, economic

damages, intentional infliction of emotional distress, loss of consortium, and solatium. The claims are

also properly asserted against Iran and its agents and instrumentalities under 28 U.S.C. § 1606, which was

not dealt with in Cicippio-Puleo. Indeed, the appellants in Cicippio-Puleo never even mentioned §

1606 in their brief or at the oral argument. Section 1606 provides:

> As to any claim for relief with respect to which a foreign state is not entitled
> to immunity under Sections 1605 or 1607 of this chapter, the foreign state
> shall be liable in the same manner and to the same extent as a private
> individual under like circumstances; but a foreign state except for an
> agency or instrumentality thereof shall not be liable for punitive damages; . . .

28 U.S.C. § 1606 (emphasis added). The operative language in § 1606 providing that the foreign state

"shall be liable" is identical to the language in § 1605 note, which the Circuit Court held created a right of

action under federal law against officials, employees and agents of a foreign state in their personal

capacities. Cicippio-Puleo, 2004 WL 66771, *7.

Counsel for certain amici in Cicippio-Puleo raised the §1606 argument in their brief and at

the oral argument, but the Circuit Court declined even to deal with the issue because it had

2

never been raised by appellants' counsel. The Circuit Court stated: "The possibility that an alternative source of law might support such a claim was addressed only by amici, and we do not ordinarily decide issues not raised by the parties." Id. at *11.

The Cicippio-Puleo opinion was carefully crafted. Over and over, whenever the opinion referred to the fact that § 1605(a)(7) did not create a cause of action against a foreign state, it expressly coupled the comment with the words "and the Flatow Amendment."

In Cicippio-Puleo, plaintiffs sought to base claims for intentional infliction of emotional distress and solatium against Iran and MOIS solely on the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7), and the Flatow Amendment, 28 U.S.C. § 1605 note. 2004 WL 66771, at *2. On appeal, the Circuit Court addressed the narrow issue of "whether section 1605(a)(7) and the Flatow Amendment . . . provide a cause of action against a foreign state." Id. at *4. Answering the question in the negative, the Circuit Court stated:

> We now hold that neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private cause of action against a foreign government. Section 1605(a)(7) merely waives the immunity of a foreign state without creating a cause of action against it, and the Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself. Because we hold that there is no statutory cause of action against Iran under these provisions, we affirm the District Court's judgment without deciding whether the evidence presented by the plaintiffs is sufficient to recover . . . .

Id. at *7. The holding in Cicippio-Puleo is limited; it instructs that (1) Section 1605(a)(7) is a jurisdiction-conferring statute that abrogates sovereign immunity, but does not create a cause of action thereunder, and (2) the Flatow Amendment is a federal statutory cause of action under

Section 1605(a)(7) that may be asserted against officials, employees, and agents of a foreign state, but not the state itself.

Importantly, the Cicippio-Puleo decision does not address whether, if the FSIA waiver requirements under § 1605(a)(7) are satisfied, § 1606 authorizes a plaintiff to bring suit against a state-sponsor of terrorism and its agencies and instrumentalities pursuant to other sources of law, such as state law claims for wrongful death. Indeed, the Circuit Court intentionally left this question unanswered and remanded the matter to the District Court specifically "to allow plaintiffs an opportunity to amend their complaint to state a cause of action under some other source of law, including state law . . . ." Id. at *11 .

On January 22, 2004, just a few days after the Cicippio-Puleo decision was announced, The Honorable John D. Bates was confronted with the same issue in the <u>Dammarell</u> case against Iran pending in this Court (No. 01-2224 JDB). Judge Bates was persuaded that Phase Two of the trial in <u>Dammarell</u> should proceed before Magistrate Judge Facciola and that plaintiffs' remaining evidence should be received, as originally scheduled, precisely because of the narrow scope of Cicippio-Puleo. Plaintiffs respectfully submit that consideration of the Cicippio-Puleo decision and the applicable sources of law for claims against Iran and its agencies and instrumentalities is best undertaken after Plaintiffs file their proposed findings of fact and conclusions of law. This is particularly so in the context of the present case where most of the trial has been completed and consideration of these issues by this Court is best accomplished on a complete record and with the benefit of findings of fact and conclusions of law addressing Plaintiffs' individual claims. A copy of Judge Bates' order is attached hereto as Exhibit 1. Plaintiffs respectfully suggest that the same type of order entered by Judge Bates would be appropriate here.

## II. STATE AND COMMON LAW CLAIMS MAY ALSO BE BROUGHT AGAINST STATE SPONSORS OF TERRORISM.

In none of the FSIA terrorism cases reviewed by Plaintiffs – nor in the legislative history of the FSIA – is there any suggestion that the Flatow Amendment provides the exclusive cause of action for U. S. nationals to redress state-sponsored terrorism, or preclude causes of action available from other sources of law. See Kilburn v. Republic of Iran, 277 F. Supp.2d 24, 35 (D.D.C. 2003) ("A plaintiff bringing suit under section 1605(a)(7) may base his claim on conventional common-law torts.") (internal citations omitted). In suits for terrorism where jurisdiction is based on 28 U.S.C. § 1605(a)(7), even the Flatow Amendment merely supplements state and common law tort causes of action, such as wrongful death, battery, assault, intentional infliction of emotional distress, and loss of solatium. Id. at 36 (plaintiff's commonlaw claims co-exist alongside the federal statutory cause of action granted under the Flatow Amendment). Indeed, these types of causes of action are nearly universal and existed by statute or at common law long before the Flatow Amendment was enacted. [1] See also Bettis v Islamic Republic of Iran, 315 F.3d 325, 333 (D.C. Cir. 2003) (courts may consider state common law to

---

[1] In Section 1605(a)(7), Congress listed the specific types of state and common law claims that it intended for the new statute to allow litigants to bring – i.e., claims for "personal injury or death," caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act." 28 U.S.C. § 1605(a)(7). In so doing, Congress makes reference to longstanding and well-established principles of international law, which condemned this conduct and recognized the importance of accountability for states that perpetrate it. See RESTATEMENT (3D) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 404 (1986) (approving jurisdiction for acts "recognized by the community of nations as of universal concern, such as piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism"). Congress effectively acknowledged the existence of causes of action derived from international law, and there are and were state and common law torts in the U.S. that mirror those claims. Knowing what causes of action victims of terrorism might bring, Congress limited the one it wanted to permit to those it put in the immunity waiver statute – 28 U.S.C. § 1605(a)(7). Therefore, prior to the enactment of the Flatow Amendment, Congress had expressed the types of suits that could be maintained against foreign states in U.S. courts. These types of suits mirrored the state and common law actions already existing, e.g., wrongful death, solatium, intentional infliction of emotional distress.

determine the meaning of a cause of action under the FSIA); Hill v. Republic of Iraq, 328 F.3d 680,

684 (D.C. Cir. 2003) ("non-immune foreign state is subject under the FSIA to federal common law

for determining the amount of damages a plaintiff can recover.").

The FSIA allows plaintiffs to maintain state and common law claims where a foreign state

is not entitled to immunity under § 1605(a)(7). Accordingly, Plaintiffs' claims against Defendants

Iran, MOIS, and IRGC are viable because the Defendants are not entitled to immunity under 28

U.S.C. § 1605(a)(7) [2] and the claims are based on state and common law.

### III. UNDER THE NOTICE PLEADING CONCEPT OF RULE 8(a)(2), PLAINTIFFS' SECOND ADMENDED COMPLAINTS ARE SUFFICIENT TO EMBODY ANY THEORY OF RECOVERY.

Plaintiffs' Second Amended Complaints do not refer expressly to § 1606. They do refer to well-

known state and common law causes of action. The Complaints set forth all of the facts necessary to

establish a cause of action under any applicable theory. The fact that § 1606 was not expressly

mentioned does not prevent Plaintiffs from relying on § 1606 or state or common law causes of action.

As stated by the two learned authors, Wright and Miller:

[2]

It is beyond credible dispute that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1605(a)(7). Section 1605(a)(7) waives sovereign immunity of a designated foreign state in actions for "which money damages are sought for personal injury or death caused by an act of . . . extrajudicial killing . . ., or the provision of material support or resources . . . for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency . . ." The term "extrajudicial killing" is defined in 28 U.S.C. § 1605(e) and has the same meaning given that term in the Torture Victim Protection Act of 1991 (the "TVPA"). The TVPA defines "extrajudicial killing" as "a deliberate killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized peoples." 28 U.S.C. § 1350 note. These consolidated actions arise from the extrajudicial killings of seventeen U.S. Airmen and officers killed in Dhahran, Saudi Arabia, by terrorists directed, funded, and supported by Iran, through its agents, MOIS and IRGC. Iran "has been designated a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) continuously since January 1984." Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 9 (D.D.C. 1998). Because Plaintiffs are U.S. citizens and their claims fall squarely within the ambit of 28 U.S.C. § 1605(a)(7), this Court has subject matter jurisdiction over the consolidated actions.

> It also should be remembered that many federal courts have held that a complaint is sufficient against a motion to dismiss, if it appears from the complaint that plaintiff may be entitled to any form of relief, even though the particular relief he demanded and the theory on which he seems to rely are not appropriate.

5 CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1219

(2d ed. 1990). Wright and Miller make the same point at § 1216 of their treatise where they state: "The complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader . . ." Id. § 1216.

There are literally scores of cases in support of this proposition. For example, in Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992), the Court said: "Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be consistent with the allegations . . . But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." The Fifth Circuit in, Peavy v. WFAA-TV, Inc., 221 F.3d 158, 167 (5th Cir. 2000), quoting an earlier decision in that court stated: "[t]he form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." See also La Raza Unida v. Volpe, 440 F.Supp. 904, 912 n.20 (N.D. Cal. 1977) ("The fact that plaintiffs did not specifically allege in their complaint a violation of Section 1983 premised upon noncompliance with federal statutes does not bar relief. Modern rules of notice pleading require only a statement of facts upon which relief may be granted, not a definitive statement as to the plaintiffs' theory of the case.").

Based on these standard and long-standing rules, Plaintiffs are entitled to rely on § 1606 and state and common law.

CONCLUSION

The Cicippio-Puleo decision does not bar Plaintiffs' claims in the instant cases. Cicippio-Puleo holds that neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private cause of action against a foreign state or its agencies and instrumentalities. It left open the possibility that plaintiffs may pursue private causes of action arising from other sources of law, including § 1606 or state law in actions against foreign states. Because § 1606 of the FSIA provides that a foreign state "shall be liable in the same manner and to the same extent as a private individual under like circumstances", a plaintiff may assert state and common law torts, as well as a separate § 1606 action incorporating the Flatow Amendment against a foreign state not entitled to sovereign immunity. The unambiguous language of § 1606 and case law support this position. See e.g., Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 489 (1983) (a foreign state excepted from immunity under 28 U.S.C. § 1605 or 1607 is liable in the same manner and to the same extent as a private individual under like circumstances) (citing 28 U.S.C. § 1606)); Acree v. Republic of Iraq, 271 F. Supp.2d 179, 215 (D.D.C. 2003) ("[s]uits brought under § 1605(a)(7) may be based on conventional common law torts") (citing cases)). The common law claims of wrongful death, survival action, economic damages, intentional infliction of emotional distress, loss of consortium, and solatium are conventional common law torts and do not arise from the Flatow Amendment. Consequently, Plaintiffs' claims against Defendants Iran, MOIS, and IRGC, are unaffected by the CicippioPuleo decision.

REQUEST FOR HEARING

Trial of this matter is scheduled to resume on February 5, 2004. Several Plaintiffs who are expected to testify at trial have already made plans to travel long distances. A delay in the

trial of this matter would likely result in additional costs to the Plaintiffs or in their inability to

attend trial at a later date. Consequently, if the Court has any concerns regarding the issues

raised in this Memorandum, Plaintiffs respectfully request that the Court set a hearing as

early as possible in the week of January 26, 2004 to discuss such concerns. Alternatively, the

Court could sign an order similar to the Order signed by Judge Bates on January 22, 2004.

Respectfully submitted,


_____/s/_____
Shale D. Stiller, D.C. Bar No.
MD00772 Kurt J. Fischer, D.C. Bar
No. MD03300 Adam S. Hoffinger,
D.C. Bar No. 431711 Elizabeth R.
Dewey, D.C. Bar No. 445334 Louis
J. Rouleau, D.C. Bar No. MD14857
Hank B. Walther, D.C. Bar No.
477218

PIPER RUDNICK LLP
1200 Nineteenth Street,
N.W. Washington, D.C.
20036-2412 Tel: (202)
861-3900 Fax: (202)
223-2085

## LOCAL CIVIL RULE 7(m) STATEMENT

Thomas Fortune Fay, Attorney for Plaintiff, herewith certifies in accordance with

United States District Court for the District of Columbia Local Rule 7(m) that the

foregoing Motion has been the subject of discussion with counsel for all opposing parties

and that the Motion is opposed.

Thomas Fortune Fay_____
Thomas Fortune Fay

9