UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES OWENS, et al., | ( | |
| | ( | |
| Plaintiffs, | ( | |
| | ( | |
| .      v. | ( | Civil Action No. 01-2244 (JDB) |
| | ( | |
| REPUBLIC OF THE SUDAN, et al., | ( | |
| | ( | |
| Defendants. | ( | |

**MEMORANDUM OF SUDAN DEFENDANTS
IN RESPONSE TO PLAINTIFFS' SUR-REPLY**

Defendants Republic of the Sudan and the Interior Ministry of the Republic of the Sudan (collectively "Sudan"), pursuant to the Order of this Court, respectfully submit this Memorandum in response to the Plaintiffs' Sur-Reply to Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Sur-Reply").

**ARGUMENT**

**I.   PLAINTIFFS' AMENDED COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT FOR JURISDICTION UNDER SECTION 1605(a)(7) OF THE FOREIGN SOVEREIGN IMMUNITIES ACT ("FSIA").**

In contrast to the position Plaintiffs took in their Opposition to Sudan's Motion to Dismiss,[1] Plaintiffs now assert in their Sur-Reply that their Amended Complaint states a basis for

---

[1]   In Plaintiffs' Memorandum in Opposition to Motion to Dismiss of Defendants Republic of Sudan and the Interior Ministry of Sudan, at 3, Plaintiffs argued that their Amended Complaint stated sufficient basis for jurisdiction under Section 1605(a)(7) because Plaintiffs there alleged that: "The actions of those who carried out the attack described, were within the scope of their agency on behalf of Defendants."

FSIA jurisdiction over Sudan by alleging "material support" on the part of Sudanese officials. To attempt to show this, Plaintiffs point to allegations of their Amended Complaint they claim to meet the requirements of Section 1605(a)(7).  Sur-Reply 4-6

However, the allegations that Plaintiffs now cite do not meet the jurisdictional requirements expressly stated in the statute.  For FSIA jurisdiction to be based upon the "material support" element of Section 1605(a)(7), three requirements (among others) must be met:[2]

> First, the provision of material support or resources (as defined in section 2339A of Title 18) for one of the acts enumerated in Section 1605(a)(7) (*e.g.,* extrajudicial killing) must have been "engaged in by an official, employee, or agent" of Sudan.

> Second, the provision of such support or resources must have been "within the scope of his or her office, employment, or agency."

> Third, the damages in issue must have been "caused by" such provision of material support or resources.

Plaintiffs' allegations have not met these statutory requirements.  The allegations Plaintiffs quote (Sur-Reply 4-6) from their Amended Complaint merely assert that Sudan generally tolerated and in some ways assisted al Qaeda before 1996 when Sudan expelled all al Qaeda members from the country.  However, the allegations do not meet the specific requirements of Section 1605(a)(7) set out above.

For example, Plaintiffs assert (Sur-Reply 4) that they "allege that the Sudan gave 'cover, sanctuary, technical assistance, explosive devices and training' to the al Qaeda agents who

---

[2]   Section 1605(a)(7) provides there is FSIA jurisdiction in a case:

> . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency . . .

with certain exceptions not relevant to the present argument.

destroyed the embassies."  In the first place, this is not a correct statement of what Plaintiffs actually alleged: Plaintiffs stated (Amended Complaint ¶ 2) that Sudan (and others) gave the alleged support to the al Qaeda "group" and that members of that "group" later bombed the embassies.  In any event, the allegation fails to address critical elements of the requirements of Section 1605(a)(7).  First, there is no allegation that the alleged assistance was provided "for" the embassy attacks, or for any act enumerated in Section 1605(a)(7).  The support Plaintiffs claim Sudan provided, including the alleged "explosives devices and training," does not necessarily imply terrorist acts, since explosives are used in a wide range of activities including industrial pursuits such as construction and road-building.  Indeed, Plaintiffs themselves cited the testimony of Mr. al-Fadl to the effect that al Qaeda's Hijra Construction Company "purchased explosives for its road and bridge building activities."  August 9, 2004 Opposition 14.  Second, Plaintiffs merely allege that "Sudan" did certain things; they do not allege that any particular Sudanese official acting within the scope of his or her authority provided such support.  Third, Plaintiffs do not allege that the 1998 embassy bombings were "caused by" Sudan's allegedly providing such support.  Any such support came two years or more before the embassy bombings, and Plaintiffs fail to allege how the 1998 bombings were somehow "caused by" the support that Sudan allegedly provided.

The other Amended Complaint allegations that Plaintiffs cite are similarly inadequate. Thus, Plaintiffs point to the allegation of Amended Complaint ¶ 8 that Sudan agreed to give al Qaeda and Hezbollah shelter and protection while these groups carried out planning and training for the 1998 embassy bombings.  Sur-Reply 5.  However, Plaintiffs do not allege that Sudan gave the groups "shelter and protection" for the purpose of such activities or indeed that Sudan even knew they were conducting them.  Also, as before Plaintiffs merely allege actions by

"Sudan," not by any particular Sudanese official acting within the scope of his or her authority. Moreover, here also Plaintiffs have not even attempted to allege how the 1998 Embassy attacks were "caused by" alleged shelter and protection Sudan provided up to 1996.

The inadequacies of the Amended Complaint are not shortcomings that can be cured by more artful pleading.  As Sudan showed in its August 30, 2004 Reply (at 4-7), the evidence Plaintiffs adduced to attempt to meet their burden of production falls even further short of meeting the requirements of Section 1605(a)(7) than do the allegations of the Amended Complaint.  This failure is not due to any fault in Plaintiffs' presentation.  The reason lies in the lack of evidence itself.  Sudan permitted al Qaeda's presence in the country in the early 1990's, but Sudan expelled al Qaeda from Sudan in 1996, and there is no evidence Sudan provided al Qaeda any support thereafter.  There is no evidence that any official or agent of Sudan provided any material support or resources "for" the attacks on the embassies, there is no evidence that any such support or resources were provided within the scope of any office or agency, and there is no evidence that the attacks were "caused by" any such support.

## II.    PLAINTIFFS' PROFFERED EVIDENCE IS NOT COMPETENT.

In an extraneous argument at the end of their Sur-Reply (at 6), Plaintiffs defend their use of the al-Fadl testimony to attempt to satisfy their burden of going forward with the evidence. Sudan had pointed out (Reply 4, n. 5) that the al-Fadl transcript was not authenticated, that Sudan had had no opportunity to cross-examine Mr. Al-Fadl and that there was no indication that Plaintiffs would be able to produce him at trial.  In their Sur-Reply, Plaintiffs state that, before the entry of appearance of counsel for Sudan, the Court stated that al-Fadl's testimony from the criminal trial could be used.  However, Plaintiffs provide no citation for this claim, so that Sudan

does not know whether Plaintiffs' claim is supported and if so what limitations apply to their use of such testimony as evidence.

It is striking to note that Plaintiffs' defense of their evidence does not extend to an attempt to rehabilitate the purported deposition of Mr. al Ridi.  As Sudan pointed out (Reply 4, n. 5), the al Ridi transcript Plaintiffs appended to their Opposition fails to meet even the most basic requirements of a deposition.[3]

---

[3]    On August 20, 2004, counsel for Sudan made a written request for a copy of the tape of the purported al Ridi deposition, but has as yet received no response from Plaintiffs' counsel.

## CONCLUSION

For the reasons stated herein, and for the reasons stated in Sudan's Motion to Dismiss and Memorandum in support thereof, and in Sudan's Reply, Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,

Knox Bemis (Bar No. 14852)
Martin Lutz (Bar No. 427634)

HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
(202) 955-1500

Counsel for Defendants
The Republic of the Sudan and the
Interior Ministry of the Republic of the
Sudan

September 20, 2004