UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES OWENS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>REPUBLIC OF SUDAN, et al.,<br><br>    Defendants. | Civil Action No. 01-2244 (JDB) |
| RIZWAN KHALIQ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>REPUBLIC OF SUDAN, et al.,<br><br>    Defendants. | Civil Action No. 10-356 (JDB) |

**MEMORANDUM OPINION**

Plaintiffs in these two cases are victims and family members of victims of the 1998 terrorist bombings of two U.S. embassies in Africa. Having obtained default judgments against Sudan and Iran for their roles in those bombings, they now wish to begin enforcing those judgments. In doing so, they must comply with rules for attaching and executing on the property of a foreign state contained in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610. Attachment and execution under the FSIA cannot occur until, among other requirements, a court has "determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." Id. § 1610(c). Plaintiffs seek orders acknowledging that they have properly given the required notice and that a reasonable period of time has now elapsed. For the following reasons, the Court will grant plaintiffs' request.

1

**BACKGROUND**

Plaintiffs in these two cases won final judgments that total more than half a billion dollars against Iran and Sudan in March and April 2014.[1] See Apr. 11, 2014 Order, Owens [ECF No. 305]; Mar. 28, 2014 Order, Khaliq [ECF No. 40]. Plaintiffs then began the arduous process of serving notice of the default judgments on the defendants according to the rules of 28 U.S.C. § 1608. The Court detailed plaintiffs' initial—but inadequate—efforts in an earlier order. See Apr. 1, 2015 Order, Owens [ECF No. 359]. It determined that while the Owens plaintiffs had properly served Sudan, they did not appear to have served Iran—and that the Khaliq plaintiffs had the same problem with the defendants reversed. See id. at 4. The Court held that until plaintiffs could establish that "both Sudan and Iran have been served," it could not issue the requested orders. Id. at 6 (citing Murphy v. Islamic Republic of Iran, 778 F. Supp. 2d 70, 72 (D.D.C. 2011)).

Plaintiffs have now renewed their motions and supplied additional evidence of their efforts to serve notice. See Pls.' Mot. for Order, Owens [ECF No. 382]; Pls.' Mot. for Order, Khaliq [ECF No. 80].[2] Those filings indicate that the Owens plaintiffs transmitted a copy of their judgment to Iran through diplomatic channels on June 9, 2015, see Letter from Daniel Klimow, Owens [ECF No. 382-2], and that the Khaliq plaintiffs did the same with respect to Sudan on June 15, 2015, see Letter from Daniel Klimow, Khaliq, [ECF No. 79-2]. Plaintiffs thus contend that they have now given the notice required by § 1608(e) and that a "reasonable period of time" has passed, such that attachment and execution efforts should be allowed. See 28 U.S.C. § 1610(c).

---

[1] This opinion and the accompanying order do not apply to the so-called "Aliganga plaintiffs," who intervened in Owens in 2012. See Owens v. Republic of Sudan, 71 F. Supp. 3d 252, 255 (D.D.C. 2014). The Aliganga plaintiffs obtained a separate final judgment, see id., and have not yet sought an order pursuant to 28 U.S.C. § 1610(c).

[2] Many of the parties' filings in these two cases are identical, or nearly so. For simplicity's sake, the Court will cite only the filings in Owens, except where the comparable filings in Khaliq are meaningfully different.

Never having appeared in either of these cases, Iran has filed no response. Sudan, on the other hand, has recently begun participating in these (and related) cases and opposes plaintiffs' requests. See Sudan's Opp'n, Owens [ECF No. 383]. Sudan does not quarrel with plaintiffs' provision of notice, but contends that a reasonable period of time has not elapsed. At a minimum, Sudan argues, the Court should wait until it resolves Sudan's pending motions to vacate the default judgments, see, e.g., Mot. to Vacate, Owens [ECF No. 362], and ideally should interpret § 1610(c) to require waiting until the judgments can no longer be appealed.

After the Court received the parties' initial filings, it requested a round of supplemental briefing. See Order for Supp. Briefing, Owens [ECF No. 385]. The Court noted that in a pair of recent decisions, the Seventh Circuit had said that the requirements of § 1610(c) are inapplicable to plaintiffs seeking to enforce judgments obtained under the FSIA's immunity exception for state-sponsored terrorism. See Wyatt v. Syrian Arab Republic, 800 F.3d 331, 342–43 (7th Cir. 2015); Gates v. Syrian Arab Republic, 755 F.3d 568, 575–77 (7th Cir. 2014). The Court therefore asked the parties to address whether plaintiffs' requested orders were necessary under the circumstances of these cases. No surprise: Sudan says such orders are indeed necessary. See Sudan's Supp. Br., Owens [ECF No. 387]. But less expected: plaintiffs agree. See Pls.' Supp. Br., Owens [ECF No. 386]. The Court must decide, then, whether the parties are correct that § 1610(c) is applicable here, and if so, whether its requirements are satisfied.

## DISCUSSION

"The text of the [FSIA] confers on foreign states two kinds of immunity." Republic of Argentina v. NML Capital, Ltd., 134 S. Ct. 2250, 2256 (2014). The first is jurisdictional immunity: a foreign state is immune from suit in U.S. courts except as provided in §§ 1605 to 1607 of the Act. 28 U.S.C. § 1604. This Court determined years ago that these defendants lacked jurisdictional immunity in light of § 1605A, the immunity exception applicable to certain acts of

state-sponsored terrorism. See Owens v. Republic of Sudan, 826 F. Supp. 2d 128 (D.D.C. 2011). (As noted, though, Sudan has recently filed vacatur motions that challenge that determination.) The second kind of immunity is execution immunity: even if judgment has been entered against a foreign state lacking jurisdictional immunity, the state's property within the United States is "immune from attachment[,] arrest[,] and execution except as provided in sections 1610 and 1611." 28 U.S.C. § 1609; see also NML Capital, 134 S. Ct. at 2256. Plaintiffs' goal now is thus to enforce their judgments consistent with § 1610. (No party has suggested that § 1611 is relevant here.)

Four subsections of § 1610 are important to the Court's analysis. Subsections (a) and (b) together delineate the general circumstances in which a foreign state's property in the United States is subject to execution. Subsection (a) identifies seven circumstances in which "[t]he property in the United States of a foreign state . . . , used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution." Because the term "foreign state" is defined to include "an agency or instrumentality of a foreign state," see 28 U.S.C. § 1603(a), subsection (a) is applicable both to a state itself and to its agencies and instrumentalities. Subsection (b), in turn, identifies three circumstances in which "any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution." Subsection (b) is applicable only to agencies and instrumentalities—not to a foreign state itself—and does not require that the particular property in question have been used for a commercial activity. See EM Ltd. v. Republic of Argentina, 473 F.3d 463, 472–73 (2d Cir. 2007) ("[T]he protections applicable to assets of instrumentalities vary from those applicable to the assets of the foreign states themselves"); see also H.R. Rep. No. 94-1487, at 27–30 (1976).

4

Subsection (c) contains the procedural prerequisites to execution that are foremost at issue here. Subsection (c) provides: "No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter."

Finally, there is subsection (g), which was added to § 1610 in 2008 by the same legislation that enacted § 1605A, the exception to jurisdictional immunity for certain acts of state-sponsored terrorism that underlies the judgments in these cases. See National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–342 (2008). The relevant portion of subsection (g) provides that, subject to certain exceptions,

> the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—
>
> (A) the level of economic control over the property by the government of the foreign state;
>
> (B) whether the profits of the property go to that government;
>
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
>
> (D) whether that government is the sole beneficiary in interest of the property; or
>
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g)(1).

Having initially surveyed these key features of § 1610's landscape, the Court can now turn to the first question posed by plaintiffs' requests: whether § 1610(c)'s procedural requirements even apply to these cases.

5

## I. SECTION 1610(c) APPLIES TO THESE CASES

In their initial filings, none of the parties denied the applicability of § 1610(c). The Court, however, raised the issue in light of Gates v. Syrian Arab Republic, in which the Seventh Circuit concluded that plaintiffs seeking to execute a judgment obtained under § 1605A were not constrained by § 1610(c), because "§ 1610(c) simply does not apply to the attachment of assets to execute judgments under § 1610(g) for state-sponsored terrorism." 755 F.3d 568, 575 (7th Cir. 2014); see also Wyatt v. Syrian Arab Republic, 800 F.3d 331, 343 (7th Cir. 2015) ("The Gates plaintiffs, as terrorism victims who obtained a judgment under § 1605A, could proceed to attachment and execution under § 1610(g) without complying with § 1610(c)."). With respect, this Court disagrees with the Seventh Circuit's reasoning in Gates and concludes that § 1610(c) remains applicable to plaintiffs seeking to execute a judgment obtained under § 1605A.

The central—and flawed—premise in Gates is that § 1610(g) is a freestanding immunity exception that authorizes execution and attachment to satisfy judgments under § 1605A. See Gates, 755 F.3d at 575 ("[Plaintiffs] seek attachment under § 1610(g), which authorizes attachment of property of foreign state sponsors of terrorism and their agencies or instrumentalities to execute judgments under § 1605A for state-sponsored terrorism."). In light of that premise, Gates found it critical that § 1610(c) places its conditions on any "attachment or execution referred to in subsections (a) and (b)" but not subsection (g). See id. Section 1610(c)'s failure to cross-reference § 1610(g) could not have been a mere oversight, the Gates court felt, because Congress had made several conforming amendments to § 1610 when it added subsection (g); leaving subsection (c) untouched thus appeared deliberate. See id. at 575–76. And interpreting the lack of cross-reference to mean that execution under § 1610(g) can proceed without the notice and timing requirements of § 1610(c) "is consistent with the broader legislative purpose of the 2008 FSIA

6

Amendments to make it easier for terrorism victims to obtain judgments and attach assets." Id. at 576.

Several features of the statute indicate, however, that § 1610(g) is not the freestanding immunity exception that Gates envisioned. First and foremost: while § 1610(g) identifies a category of property subject to attachment and execution to satisfy a § 1605A judgment, it says that such property "is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section." 28 U.S.C. § 1610(g)(1) (emphasis added). Neither Gates nor the briefs filed in Gates mentioned the phrase "as provided in this section," but it is critical. If § 1610(g) were a freestanding immunity exception, the phrase would make no sense. But if, instead, § 1610(g) merely provides a special rule that governs the operation of § 1610(a) and (b) in the context of a § 1605A judgment, then "as provided in this section" makes perfect sense. See Rubin v. Islamic Republic of Iran, 33 F. Supp. 3d 1003, 1013 (N.D. Ill. 2014) (agreeing that this phrase "indicates that Section 1610(g) is not a separate basis of attachment, but rather qualifies the previous subsections"), appeal docketed, No. 14-1935 (7th Cir. Apr. 25, 2014).

Subsections (a) and (b) of § 1610 corroborate this second reading. The last of subsection (a)'s seven immunity exceptions is where "the judgment relates to a claim for which the foreign state is not immune under section 1605A [or a repealed predecessor], regardless of whether the property is or was involved with the act upon which the claim is based." 28 U.S.C. § 1610(a)(7). And similarly, the last of subsection (b)'s three exceptions is where "the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605A [or the repealed predecessor], regardless of whether the property is or was involved in the act upon which the claim is based." Id. § 1610(b)(3). If § 1610(g) were a freestanding immunity exception available to § 1605A judgment-holders, these provisions referring to § 1605A within subsections

(a) and (b) would be pointless superfluities. See Rubin, 33 F. Supp. 3d at 1013. What plaintiff seeking to enforce a § 1605A judgment would invoke § 1610(a)(7), and thereby force himself to jump the procedural hurdles of § 1610(c), if he could instead invoke § 1610(g) and effortlessly stroll around them? And what legislature would draft such a statutory scheme? Cf. Hinck v. United States, 550 U.S. 501, 507 (2007) (declining "to isolate one feature" of tax statute "and use it to permit taxpayers to circumvent the other limiting features Congress placed in the same statute"). This is yet another anomaly unexamined by the Gates opinion and briefs.[3] The better reading, again, is that § 1610(a)(7) and (b)(3) remain the actual immunity exceptions for § 1605A judgments, and that § 1610(g) only provides a supplemental rule that governs their application.

What does that supplemental rule do? It overrides the general rule that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 626–27 (1983). Sometimes called the "Bancec" rule (after the Cuban instrumentality involved in First National), this means that "[i]f an instrumentality of a state operates independently of the state, liability for the obligations of the instrumentality cannot automatically be imputed to the state," nor vice versa. Restatement (Third) of Foreign Relations Law § 452 reporter's note 2 (1987) (citation omitted). Importantly, the Bancec rule "extends also to the enforcement of judgments, so that property of one agency or instrumentality of a state may not be used to satisfy a judgment against other agencies or instrumentalities of that state, or against

---

[3] Appellants in the pending Rubin appeal attempt to reconcile § 1610(a)(7) and (b)(3) with Gates's interpretation of § 1610(g). See Reply Br. of Appellants at 28, Rubin v. Islamic Republic of Iran, No. 14-1935 (7th Cir. Dec. 4, 2014), 2014 WL 7040111. They argue that the Gates reading does not render § 1610(a)(7) and (b)(3) superfluous because those provisions are still necessary for plaintiffs who hold judgments under § 1605A's repealed predecessor, § 1605(a)(7), which is not covered by § 1610(g). See id. But this would only give meaning to the references to § 1605(a)(7), while the references to § 1605A would remain pointless. And given that those references were added at the same time as § 1610(g), that is problem enough for the Gates reading.

8

the state itself, in the absence of some liability-creating relationship between the two instrumentalities." Id. (citation omitted). Section 1610(g) overrides the Bancec rule with respect to § 1605A judgments, so that the property of an instrumentality can be used to satisfy a judgment against the foreign state itself. That is so "regardless of" the five factors listed in § 1610(g)(1), which some courts had previously used to test whether an instrumentality was so extensively controlled by a state as to share its liability. See, e.g., Flatow v. Islamic Republic of Iran, 308 F.3d 1065, 1071 n.9 (9th Cir. 2002).[4]

Finally, the Court is unpersuaded by Gates's closing argument that "[e]xempting attachments under § 1610(g) . . . from § 1610(c)'s solicitous notice requirements is entirely consistent with the liberalizing purpose of the 2008 [FSIA] Amendments." 755 F.3d at 576–77. The 2008 amendments did indeed have a liberalizing thrust, but a court cannot "assume that whatever furthers the statute's primary objective must be the law." Rodriguez v. United States, 480 U.S. 522, 526 (1987). A close reading of § 1610 convinces this Court that, notwithstanding the plaintiff-friendly aims of the 2008 amendments, § 1610(c) still applies to plaintiffs, like those here, seeking to enforce a judgment under § 1605A.

---

[4] The Court's reading of § 1610(g) is also the reading that the United States has adopted in several recent cases addressing whether § 1605A judgment-holders can attach foreign-state assets in the United States that lack the connections to commercial activity required by § 1610(a) and (b). See, e.g., Br. for United States as Amicus Curiae at 22–26, Rubin v. Islamic Republic of Iran, No. 14-1935 (7th Cir. Nov. 3, 2014), 2014 WL 6671022; Br. for United States as Amicus Curiae at 27–32, Ministry of Defense v. Frym, No. 13-57182 (9th Cir. July 3, 2014), 2014 WL 3421361. That question is not presently before the Court. The Court recognizes that its interpretation of § 1610 might strongly suggest that the commercial nexus requirement remains applicable to efforts to enforce a § 1605A judgment, but reserves judgment on that issue. Cf. Kapar v. Islamic Republic of Iran, 2015 WL 2452754, at *5 (D.D.C. May 22, 2015) (suggesting in dicta that § 1610(g) eliminates the commercial nexus requirement, but not grappling with arguments discussed here); Estate of Heiser v. Islamic Republic of Iran, 807 F. Supp. 2d 9, 19 n.8 (D.D.C. 2011) (same).

9

## II. SECTION 1610(c) IS SATISFIED HERE

Having determined that § 1610(c) is indeed applicable to these plaintiffs, the question now is whether its requirements are satisfied. The first of those requirements is that plaintiffs have provided notice of their default judgments to the foreign states. See 28 U.S.C. § 1610(c) (incorporating the notice requirement of § 1608(e)). As noted, the Court previously determined that as of April 2015 neither set of plaintiffs had fully complied with this requirement: the Owens plaintiffs had served Sudan but not Iran; the Khaliq plaintiffs, the reverse. But plaintiffs have submitted updated materials indicating that service is now complete. Iran received notice of the Owens judgment through diplomatic channels on June 9, 2015 (and of the Khaliq judgment back in August 2014). See Letter from Daniel Klimow, Owens [ECF No. 382-2]; Letter from William P. Fritzlen, Khaliq [ECF No. 79-1]. And Sudan received notice of the Khaliq judgment through diplomatic channels on June 15, 2015 (and of the Owens judgment back in September 2014). See Letter from Daniel Klimow, Khaliq [ECF No. 79-2]; Letter from William P. Fritzlen, Owens [ECF No. 382-1]. Sudan does not argue that plaintiffs' notice was procedurally inadequate, and the Court concludes that plaintiffs have properly notified defendants under § 1608.

The thornier question is whether "a reasonable period of time has elapsed following the entry of judgment and the giving of [the] notice" just discussed. 28 U.S.C. § 1610(c). The statute provides no express guidance on how to assess whether a period is "reasonable." Courts have considered "the procedures necessary for the foreign state to pay the judgment (such as the passage of legislation), evidence that the foreign state is actively taking steps to pay the judgment, and evidence that the foreign state is attempting to evade payment of the judgment." Ned Chartering & Trading, Inc. v. Republic of Pakistan, 130 F. Supp. 2d 64, 67 (D.D.C. 2001) (citing H.R. Rep. No. 94-1487, at 30); accord Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas

10

Bumi Negara, 2002 WL 32107929, at *1 (S.D. Tex. Jan. 25, 2002). Although the necessary interim "will of course vary according to the nuances of each case," courts have found periods of three months and less reasonable. Ned Chartering, 130 F. Supp. 2d at 67 (six weeks reasonable); see also, e.g., Karaha Bodas, 2002 WL 32107929, at *2 (fifty days reasonable); Ferrostaal Metals Corp. v. S.S. Lash Pacifico, 652 F. Supp. 420, 423 (S.D.N.Y. 1987) (three months reasonable). Here, more than three months have passed since the last-delivered notices (and much more than that for some judgment-defendant combinations). In the absence of any evidence that defendants are making efforts to pay these judgments voluntarily—and there is none here—the Court is inclined to find three months a sufficient pause.

Sudan offers two broad arguments to the contrary, neither of which appears to have been previously addressed by any court. The first and more ambitious is that the term "judgment" in § 1610(c) means "a final, non-appealable judgment," and thus a "reasonable period" has not elapsed until either the judgment has been affirmed on appeal or the time for taking an appeal has passed. Sudan's Opp'n at 3–7. The Court is unconvinced. Sudan is correct that the phrase "final judgment" can be ambiguous, sometimes meaning merely "an appealable judgment issued by the District Court," and other times meaning "a judgment which is final in the sense that it either has already been appealed to the extent possible or is no longer subject to appeal." Mass. Union of Pub. Hous. Tenants, Inc. v. Pierce, 755 F.2d 177, 179–80 (D.C. Cir. 1985) (per curiam) (addressing 28 U.S.C. § 2412(d)(1)(B), which requires a party seeking attorney's fees to submit an application "within thirty days of final judgment in the action"). But § 1610 does not forbid execution within some proximity of "final judgment"—it doesn't say "final" at all. It says execution cannot proceed until "a reasonable period of time has elapsed following the entry of judgment." 28 U.S.C. § 1610(c) (emphasis added). It is clear in context that the "judgment" in question is the district

11

court's judgment—Sudan does not argue otherwise—and a district court's "entry of judgment" necessarily precedes the point at which the judgment becomes final in Sudan's preferred sense of being no longer appealable.  See Fed. R. Civ. P. 58(c) (specifically addressing timing of entry of judgment).  The entry of judgment, then, is a necessary step preceding appeal.  Indeed, a judgment becomes final in this sense without any action by the district court—just the passage of time or the loser's exhaustion of available appeals.  With the passage of a reasonable time specifically tethered to the event of the entry of judgment, there is no plausible hook in § 1610(c)'s text for Sudan's theory.

Sudan nonetheless urges that such a requirement (of what the Court will call "nonappealable finality") should be read into § 1610(c) in light of international comity concerns.  Sudan points first to 28 U.S.C. § 2414, under which the United States will authorize payment of foreign-court judgments that are "final," which requires the Attorney General's certification "that no appeal shall be taken from a judgment or that no further review will be sought from a decision affirming the same."  Sudan argues that U.S. courts should not treat foreign sovereigns less favorably.  But while such a lack of reciprocity may be unwise, this Court will not misread statutes to eliminate it—and § 2414 does not support Sudan's reading.  On the contrary, by illustrating how easy it is for statutory text to communicate a requirement of nonappealable finality, § 2414—which was on the books when Congress enacted § 1610(c)—makes the absence of such text in § 1610 all the more purposeful.  This is not to say § 2414's text is the only way to communicate such a requirement, just that it reinforces rather than undermines the conclusion that no such requirement lurks secretly in § 1610(c).

Sudan's other comity-based argument fares no better.  Sudan highlights a 1976 congressional hearing at which the State Department's Legal Adviser testified that the FSIA (then

just a bill) was generally consistent with the European Convention on State Immunity—a treaty, Sudan points out, that does not allow attachment or execution until a judgment has become nonappealably final. Sudan's Opp'n at 5–6 (citing Jurisdiction of U.S. Courts in Suits against Foreign States: Hearings Before the Subcommittee on Administrative Law and Governmental Relations of the H. Comm. on the Judiciary on H.R. 11315, 94th Cong., 2d Sess. 37 (1976) (statement of Monroe Leigh)). But this is not enough to infer such a requirement in § 1610(c). The Legal Adviser merely said that the FSIA was not inconsistent with the Convention "[i]n general terms." Jurisdiction of U.S. Courts, supra, at 37. That hardly indicates—if legislative history even could—that the FSIA and the Convention must be identical in this respect. Indeed, the Legal Adviser's very next comment was that "we go somewhat further on the question of execution," a reference to the fact that the Convention permitted signatories to choose not to adopt its exceptions to execution immunity, whereas no such opt-out existed in the FSIA. Id. Moreover, much like § 2414, the Convention is so clear in communicating the requirement of nonappealable finality that the absence of such a requirement in § 1610 is further highlighted. See European Convention on State Immunity, Art. 26(c), opened for signature May 16, 1972, C.E.T.S. No. 074 (incorporating the requirement of Article 20(1)(b) that "the judgment cannot or can no longer be set aside if obtained by default, or . . . is not or is no longer subject to appeal or any other form of ordinary review or to annulment"); see also Altmann, 541 U.S. at 708 (Breyer, J., concurring) (relying in part on the clarity of non-retroactivity provisions in foreign statutes and treaties, including the Convention, to conclude that the FSIA lacks a comparable limitation). Finally, Sudan's tenuous inference from one bit of legislative history can, as is so often the case, be countered by a different tenuous inference from another: namely, one might think it significant that the discussion of § 1610(c)'s "reasonable period" requirement in the House Report

accompanying the FSIA says <u>nothing</u> about having to wait until a judgment is nonappealably final. <u>See</u> H.R. Rep. No. 94-1487, at 30.  In the end, Sudan's reliance on legislative history that does not address this specific issue or mention § 1610(c) is unpersuasive.

Sudan's fallback argument is that, even if § 1610(c) does not require nonappealable finality, the Court should not deem a reasonable period to have elapsed, given that the Court might grant its pending motions to vacate the judgments.  The Court is unconvinced, however, that this argument is consistent with § 1610(c)'s role in the scheme of the FSIA.  Section 1610 speaks in terms of "time," not procedural milestones—neither (as discussed above) the point at which a judgment becomes nonappealably final, nor (as relevant here) the point at which postjudgment motions are denied.  And the case law and legislative history suggest that the purpose of § 1610(c)'s reasonable-period requirement is to allow foreign states the opportunity to make arrangements for voluntary payment, while still allowing for more immediate enforcement efforts when necessary, <u>see</u> <u>Ned Chartering</u>, 130 F. Supp. 2d at 67; H.R. Rep. No. 94-1487, at 30—but not to give foreign states an automatic stay of execution pending the resolution of postjudgment motions.

This is not to say that Sudan's basic concern—that its assets will be imperiled on the basis of a judgment that this Court might soon vacate—is illogical.  But if Sudan would like a stay of execution pending the resolution of its motions, it can move for such relief under Federal Rule of Civil Procedure 62(b).  If Sudan suggests "appropriate terms for the opposing part[ies'] security," the Court could grant such a motion.  Fed. R. Civ. P. 62(b)(4); <u>see also</u> <u>Peacock v. Thomas</u>, 516 U.S. 349, 359 n.8 (1996) ("The district court may only stay execution of the judgment pending the disposition of certain post-trial motions or appeal if the court provides for the security of the judgment creditor.").  As for § 1610(c), however, the Court concludes that a "reasonable period of

time" has elapsed, and that plaintiffs are entitled to begin enforcing their presumptively valid judgments. The Court will therefore issue plaintiffs' requested orders with respect to both Sudan and Iran. To be clear, these orders will not authorize the attachment or execution upon any particular property: plaintiffs must still convince a court with jurisdiction over specific assets that those assets are subject to attachment or execution under § 1610. See Agudas Chasidei Chabad v. Russian Federation, 798 F. Supp. 2d 260, 270-71 (D.D.C. 2011).

## CONCLUSION

For the foregoing reasons, the Court concludes that: § 1610(c) applies to plaintiffs' enforcement efforts; plaintiffs' have properly provided notice to defendants under § 1608; and a reasonable period of time has elapsed since the entry of judgment and defendants received notice. A separate order will issue in each case.

/s/
JOHN D. BATES
United States District Judge

Dated: October 28, 2015