**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JAMES OWENS, et al.,

                 Plaintiffs,

    v.

REPUBLIC OF SUDAN, et al.,

Civil Action No. 01-2244 (JDB)
**FILED UNDER SEAL
REDACTED VERSION**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DEFENDANT REPUBLIC OF SUDAN TO PRODUCE DOCUMENTS AND ANSWER
<u>INTERROGATORIES IN RESPONSE TO PLAINTIFFS' DISCOVERY REQUESTS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

ARGUMENT ........................................................................................................ 8

    **I.**   **Plaintiffs' Discovery Requests Seek Necessary Information to Enforce the Judgment and Are Plainly within the Scope of Rule 69 Discovery. ......................... 8**

    **II.**  **Plaintiffs Are Entitled to Discovery Regarding Sudan's Assets and Transactions in the United States, and the *Amduso* Production Does Not Suffice. ................................................................................................... 11**

        A.   The *Amduso* Production Does Not Satisfy Plaintiffs' Discovery Requests. ......... 12

        B.   The *Amduso* Production Is Itself the Result of A Patently Deficient Search for Responsive Documents. .................................................... 13

        C.   The *Amduso* Production Is Long Outdated, and Sudan Has Not Produced any Supplemental Material. ................................................... 15

   **III.** **Plaintiffs Are Entitled to Discovery Relating to Sudan's Assets outside of the United States ................................................................... 16**

   **IV.** **Plaintiffs Are Entitled to Discovery Relating to Assets Sudan Considers to Be "Military" or "Diplomatic" in Nature. .......................................... 19**

CONCLUSION .................................................................................................... 21

## INTRODUCTION

The Republic of Sudan ("Sudan") has stonewalled post-judgment discovery in an unyielding evasion of its obligations to Plaintiffs, and in blatant violation of the Federal Rules and this Court's orders.  This Court entered judgment against Sudan over five years ago, on March 28, 2014, finding that Sudan's material support enabled al Qaeda to carry out the 1998 embassy bombings in Kenya and Tanzania ("Embassy Bombings").  *See Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 149–51 (D.D.C. 2011).  Since that time, Sudan has availed itself of the U.S. courts to challenge the underlying judgment in this Court, pursue appeals in the D.C. Circuit and D.C. Court of Appeals, and file petitions for certiorari in the Supreme Court of the United States, but it has done nothing to satisfy the judgment of this Court: It has never posted any appeals bond; has not paid one cent to Plaintiffs in satisfaction of their judgment; and, as is the subject of this motion, for nearly two years has refused to provide any material responses to Plaintiffs' post-judgment discovery requests seeking information about Sudan's assets.

Plaintiffs' post-judgment discovery requests seek basic information regarding Sudan's assets and commercial relationships in the United States and 16 other countries.  After 23 discovery letters and five meet-and-confers, Sudan has refused to provide meaningful responses to any of Plaintiffs' discovery requests.  It has not answered *any* of Plaintiffs' interrogatories, and the handful of documents Sudan has produced consist of either printouts of government websites ███ ████████████████████████████████████████████████████████████████ ███████████  That production was itself inadequate and incomplete and does not even pretend now to be current.

Sudan's refusal to comply with its discovery obligations allows it to continue thwarting this Court's judgments, while simultaneously availing itself of the American legal and political system.  Public sources indicate that Sudan recently entered into a $6 million lobbying contract to

influence U.S. officials; is seeking investment in a major oil project from U.S. sources; has established a significant commercial relationship with a U.S. banking institution; and continues to pay high-priced lawyers and lobbyists to advance its commercial interests in the United States—all of which Sudan has hidden from Plaintiffs.  But the Federal Rules permit judgment creditors such as Plaintiffs to seek information about these and other assets and transactions from Sudan so that Plaintiffs can identify Sudan's assets and enforce their judgments, and the Federal Rules likewise demand Sudan's timely and complete responses to Plaintiffs' requests.  For nearly two years now, Sudan has disregarded these obligations.  This Court should grant Plaintiffs' motion under Federal Rule 37 for an order compelling Sudan to immediately produce full and complete responses to Plaintiffs' discovery requests seeking information regarding Sudan's assets and commercial activities.

## BACKGROUND

On August 7, 1998, al Qaeda carried out simultaneous suicide bombing attacks on the U.S. embassies in Nairobi, Kenya and Dar es Salaam, Tanzania, killing hundreds of people and injuring over a thousand others.  Plaintiffs are primarily surviving family members of those killed in the attacks, who brought suit against Sudan and the Islamic Republic of Iran ("Iran") to hold them accountable for their support of al Qaeda's Embassy Bombings.  Upon hearing extensive evidence, this Court determined that Sudan provided material support to al Qaeda by allowing it to train, recruit, and plan its terrorist activities.  *See Owens*, 826 F. Supp. 2d at 149–51.  Based on its findings, the Court entered judgment against Sudan and Iran in the amount of $487,687,665.78 (the "Judgment").[1]

---

[1]  Undersigned counsel also represents the Plaintiffs in *Mwila, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 08-1377 (D.D.C.) and *Khaliq et al. v. Republic of Sudan et al.*, Civil Action No. 10-356 (D.D.C.). All together, the Plaintiffs hold judgments against Sudan and Iran

In an effort to execute on the Judgment, pursuant to Federal Rule of Civil Procedure 69, Plaintiffs served Sudan with 15 document requests and 15 interrogatories ("Plaintiffs' Discovery Requests") on January 16, 2018, which sought basic information about the assets, financial transactions, and commercial relationships of Sudan and its agencies and instrumentalities.[2] Plaintiffs' Discovery Requests focused on Sudan's assets and transactions in the United States and 16 other countries, defined as the "Listed Countries."[3] *See* Ex. 1 at 2.[4] Specifically, the Plaintiffs' Discovery Requests sought information regarding:

(1) Sudan's bank accounts and transaction history (RFP Nos. 1–4, Interrog. No. 1 );

(2) Sudan's commercial or standby letters of credit (RFP No. 5, Interrog. No. 2);

(3) Sudan's outstanding loans (RFP No. 6, Interrog. No. 3);

(4) Sudan's assets or property (RFP No. 7, Interrog. No. 4);

(5) Other financial assistance received by Sudan (Interrog. No. 5); and

(6) Sudan's contracts and commercial transactions (RFP No. 8, Interrog. No. 6).[5]

---

in the amount of nearly $1 billion. *See* Order, *Mwila v. Islamic Republic of Iran*, No. 08-1377 (D.D.C. Mar. 28, 2014), Dkt. No. 88 (entering judgment for $419,752,640.49); and Order, *Khaliq v. Republic of Sudan*, No. 10-356 (D.D.C. Mar. 28, 2014), Dkt. No. 40 (entering judgment for $49,761,544.86).

[2] Pursuant to 28 U.S.C. § 1610(g), the property of Sudan's agencies and instrumentalities is also subject to potential execution to satisfy the Judgment.  The Plaintiffs' Discovery Requests define "Sudan" as including its agencies and instrumentalities, as agreed by Sudan.  Here, unless otherwise stated, Plaintiffs refer to "Sudan" as including its agencies and instrumentalities.

[3] The Listed Countries are the United States, Canada, the United Kingdom, Bermuda, the British Virgin Islands, Switzerland, Italy, France, Malaysia, Sweden, Australia, Japan, New Zealand, Germany, the Cayman Islands, Hong Kong, and Panama.

[4] References to an exhibit are references to the exhibits attached to the Declaration of Noah P. Sullivan ("Sullivan Decl."), submitted herewith.

[5] In addition to these requests, Plaintiffs sought information regarding the structure and relationship between Sudan and its state-owned oil company, Sudapet (RFP Nos. 9–15, Interrog. Nos. 9–15); however, Plaintiffs withdrew the interrogatories and deferred the document requests ██████████████████████████████████

Sudan served a litany of objections on March 23, 2018, attached as Ex. 2 ("Sudan's Objections").  In addition to boilerplate generalized objections regarding scope and burden, Sudan objected to Plaintiffs' request for information regarding non-U.S. assets and transactions, and to Plaintiffs' requests for information regarding assets that it claimed are immune under the Foreign Sovereign Immunities Act ("FSIA") or the Vienna Conventions.  *See, e.g.*, Sudan's Objections to RFP Nos. 1–4 and Interrog Nos. 1–4.  Sudan stated, however—in March 2018, over 18 months ago—that it would "produce responsive documents and information" about its "assets in the United States," subject to a protective order.  *See, e.g.*, Sudan's Objections to RFP Nos. 1, 2, 5–8 and Interrog. Nos. 1–4, 6.

Since receiving Sudan's Objections, Plaintiffs have exchanged 23 discovery letters with Sudan, conducted five meet-and-confers, and made numerous compromises.[6]  During their first meet-and-confer, the parties focused on threshold issues regarding the relevance of non-U.S. assets and transactions, as well as ways to focus Plaintiffs' Discovery Requests.  *See* Ex. 8 (Plaintiffs' Apr. 23, 2018 Letter) (memorializing the April 3, 2018 meet-and-confer).  Soon thereafter, Sudan claimed that it would, with three months' time, provide preliminary information regarding whether Sudan held assets in the Listed Countries.  *See* Ex. 9 (Sudan's May 11, 2018 Letter) at 2.  Sudan also committed to provide a list of its agencies and instrumentalities, and represented that, "[t]o the extent Sudan has any non-diplomatic assets in the United States, [it would] produce any responsive information subject to a stipulated protective order."  *Id.*

---

[6]  The discovery correspondence between the parties is included in the Sullivan Declaration, for completeness.  Here, Plaintiffs highlight the most relevant information for the instant discovery dispute.

After nearly a year of non-responsiveness, Plaintiffs wrote Sudan on April 4, 2019, noting that Plaintiffs had not received responses to their discovery requests, including the information promised in May 2018.  Plaintiffs followed up again when the Court entered a protective order on April 29, 2019.  *See* Dkt. 432; Ex. 13 (Plaintiffs' May 3, 2019 Email).  Plaintiffs and Sudan exchanged further correspondence, and Plaintiffs have made a series of significant and good-faith concessions to forge agreement and expedite discovery:

- Plaintiffs limited the time period of all of the requests.  For U.S.-based assets and transactions, Plaintiffs agreed Sudan need only provide information from January 2017 onward; for assets and transactions in the other 16 Listed Countries, Plaintiffs agreed Sudan need only provide information from March 2014 onward, *see* Ex. 12 (Plaintiffs' Apr. 22, 2019 Letter) at 1;

- Plaintiffs withdrew Interrogatory Nos. 9–14 and deferred RFP Nos. 9–15 in exchange for Sudan's agreement to provide information about ████████████████████████████ ████████████████; and

- Plaintiffs revised Interrogatory Nos. 5 and 6 to clarify and further narrow the requests, limiting their requests to transactions valued above a threshold amount that occurred within the Listed Countries.  *See* Exs. 25, 27 (Plaintiffs' Aug. 5 and Aug. 19, 2019 Letters).

For the convenience of the Court, a list of Plaintiffs' Discovery Requests, as narrowed through negotiation, is attached to Plaintiffs' motion as Appendix A.

In addition to these agreed-upon compromises, instead of requiring discovery responses regarding Sudan's diplomatic or military assets, Plaintiffs offered to allow Sudan simply to produce a log of summary information in order to enable Plaintiffs to evaluate whether the assets required further discovery.  *See* Ex. 12 (Plaintiffs' Apr. 22, 2019 Letter) at 2.  ██████████████ ████████████████████████████████████

To further expedite Sudan's provision of readily available information, Plaintiffs asked that Sudan produce to them the material that Sudan had produced ████████ in response to the Court-compelled productions in *Milly Mikali Amduso, et al. v. Republic of Sudan, et al.*, Civil Action No. 08-1361 (JDB) (D.D.C.) ("*Amduso*").  *See* Ex. 12 (Plaintiffs' Apr. 22, 2019 Letter) at

2.  After the Court entered the protective order in this case, Sudan produced on May 6, 2019 ███

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████

All the while, Plaintiffs have learned from public sources that Sudan has had material and ongoing commercial contact with entities based in the Listed Countries, including the United States, revealing substantial resources that Sudan is hiding.  For example:

- Sudan retained high-priced lawyers and lobbyists to advance its interests in the United States, including White & Case LLP to represent Sudan in this and other litigation matters and Squire Patton Boggs LLP for lobbying.  *See* Ex. 3  (Squire Patton Boggs (US) LLP, FARA Registration, June 1, 2017).

- In June 2019, Sudan entered into a $6 million lobbying contract to influence U.S. officials with a Canadian firm.  *See* Ex. 4 (Dickens & Madson (Canada) Inc., FARA Registration, June 17, 2019) at 5–9.

- This same Canadian lobbying group reported that it would also assist Sudan in its ongoing efforts to attract U.S. investment in a major oil project.  *See id*. at 6.

- Sudan's instrumentality, the Agricultural Bank of Sudan, through an engagement with a United States law firm, successfully established a banking relationship with a U.S. bank in 2017.  *See* Ex. 5 (Compl., *Law Offices of Arman Dabiri & Assoc. PLC v. Agric. Bank of Sudan, et al.*, Civ. No. 17-02497 (D.D.C.)) ¶¶ 17–24.

- Sudan has pursued debt restructuring activity in the United States through its $300,000 retention agreement with Cooke Robotham LLC, now doing business as the Cooke Legal Group, PLLC.  *See* Ex. 6 (Cooke Robotham LLC, FARA Registration, Feb. 14, 2017) at 5–8.

███████████████████████████████████████████████████████████████

Moreover, the recent $6 million lobbying contract, pursuit of U.S. investment in a major oil deal,

and ongoing transactions with Sudan's U.S. lawyers and lobbyists have occurred *after* Sudan's April 2019 governmental transition.

In addition to these commercial activities, Sudan has also continued to avail itself of the U.S. court system. Sudan made a second appearance in this case to file a Rule 60 motion to set aside the Judgment. *See* Dkt. 362. After the Court denied that relief, Sudan has pursued extensive appellate review of the Judgment by filing an appeal in the D.C. Circuit, briefing in the D.C. Court of Appeals, and filing petitions for certiorari in the Supreme Court of the United States.[7] Sudan has similarly availed itself of the U.S. courts to resist judgments held by other victims of Sudan's support of terrorism. *See, e.g.*, *Monicah Okoba Opati, et al. v. Republic of Sudan, et al.*, No. 17-1268 (U.S.); *Republic of Sudan v. Harrison*, 139 S. Ct. 1048 (2019).

Despite Sudan's ongoing commercial activity in the United States, and its active participation in the U.S. legal and political systems, Sudan has for nearly two years produced virtually no information in response to Plaintiffs' post-judgment discovery requests. ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Plaintiffs gave Sudan ample time to produce responsive information, including liberal extensions after

---

[7] On July 28, 2017, the D.C. Circuit affirmed in part this Court's decision in *Owens v. Republic of Sudan*, 174 F. Supp. 3d 242 (D.D.C. 2016), and certified a question of state tort law to the D.C. Court of Appeals. *See Owens v. Republic of Sudan*, 864 F.3d 751, 825 (D.C. Cir. 2017). Sudan has sought Supreme Court review of that decision, and its petition for a writ of certiorari remains pending. *See* Pet. for Writ of Cert., *Republic of Sudan v. Owens*, No. 17-1236 (U.S.). On September 20, 2018, the D.C. Court of Appeals ruled in Plaintiffs' favor on the question certified by the D.C. Circuit. *See Republic of Sudan v. Owens*, 194 A.3d 38, 45 (D.C. 2018). On May 21, 2019, the D.C. Circuit entered judgment in accordance with the ruling of the D.C. Court of Appeals and issued its mandate. *See* Amended Judgment, Doc. No. 1788649, *Owens v. Republic of Sudan*, Civil Case No. 14-5105 (D.C. Cir. May 21, 2019). Sudan has applied for and received an extension of time in which to file a petition for a writ of certiorari to the United States Supreme Court from this second judgment of the D.C. Circuit. *See Republic of Sudan v. Owens*, No. 19A223 (U.S.).

Sudan's governmental transition in April 2019.  *See* Ex. 13 (Plaintiffs' May 3, 2019 Email) and Ex. 25 (Plaintiffs' Aug. 5, 2019 Letter) at 1 (memorializing the July 31, 2019 meet-and-confer). Yet Sudan still has failed to produce even one document in addition to the historical production from the *Amduso* litigation, or *any* interrogatory response.  *See* Ex. 29 (Plaintiffs' Sept. 20, 2019 Letter).  Sudan has represented that productions ████████████████████████████ ████████████████████████████████████████████████████████████████ ███████, but these efforts come far too late, and Plaintiffs—whose judgments have languished unsatisfied for five years—should not be made to wait ████████████████████████ █████████████████. Because Sudan has wantonly disregarded its obligations to comply with Plaintiffs' reasonable post-judgment discovery requests, this Court should enter an order compelling Sudan's prompt compliance.

## ARGUMENT

Under Rule 37, a party may move for an order "compelling an answer, designation, production or inspection" from a party who fails to respond to a discovery request.  Fed. R. Civ. P. 37(a)(3)(B).  "The party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete," and to show the relevance of the requested material. *Equal Rights Ctr. v. Post Properties, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007).  That burden is easily met here, where Sudan has provided no material responses to Plaintiffs' Discovery Requests, which plainly seek information relevant to and necessary for enforcement of the Judgment.

**I.    Plaintiffs' Discovery Requests Seek Necessary Information to Enforce the Judgment and Are Plainly within the Scope of Rule 69 Discovery.**

Sudan objects to the scope and burden imposed by Plaintiffs' Discovery Requests, ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ The ███████ of the burden of

Plaintiffs' post-judgment discovery pales in comparison to the grievous harm Sudan has imposed on Plaintiffs, but Sudan's dismay is misplaced in any event.  The general rule is that "legal victors may engage in broad post-judgment discovery," and Sudan's status as a foreign sovereign "does not alter" the familiar discovery standards under the Federal Rules.  *Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 94 (D.D.C. 2017).  Indeed, Rule 69(a)(2) is "quite permissive," allowing Plaintiffs to "obtain discovery [from Sudan]" regarding "any non-privileged matter that is relevant" to Plaintiffs' judgment execution efforts.  *Republic of Arg. v. NML Capital, Ltd*., 573 U.S. 134, 139-40 (2014); Fed. R. Civ. P. 26(b)(1) and 69(a)(2); *see also Credit Lyonnais, S.A. v. SGC Int'l, Inc*., 160 F.3d 428, 431 (8th Cir. 1998) ("[T]he presumption should be in favor of full discovery of any matters arguably related to [judgment creditor's] efforts to trace [judgment debtor's] assets and otherwise to enforce its judgment.").

Plaintiffs' Discovery Requests, served pursuant to Rule 69(a)(2), seek information focused squarely on enforcement of Plaintiffs' judgments, including basic information regarding Sudan's bank accounts, letters of credit, outstanding loans, other assets, and recent commercial transactions and contractual relationships in the Listed Countries.  This is precisely the kind of information that Rule 69 permits Plaintiffs to obtain from Sudan, relating to the "location of the judgment debtor's assets which would satisfy the judgment" or "the source of those assets."  *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003) (compelling production of documents from law firm relating to judgment debtor's financial transactions); *see also* 12 Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3014 (2d ed. 1997) ("The judgment creditor is allowed discovery to find out about assets on which execution can issue [or that] are otherwise beyond the reach of execution.").

The case *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 603 F. Supp. 2d 1 (D.D.C. 2009), is instructive.  There, judgment creditors of the Democratic Republic of Congo (the "DRC") sought discovery regarding, for example, "all real property owned by the DRC outside the territorial limits of the DRC"; the "location, value, and use of airplanes, trucks, boats, cars or other vehicles" outside the DRC in which the DRC "has an ownership interest"; "all accounts at any banks or financial institutions" outside the DRC; "all accounts at any brokerage houses or other financial institutions" outside the DRC; documents sufficient to identify "any loan" issued by an entity outside the DRC; and "documents relating to any and all existing contract(s)" between the DRC and an entity outside the DRC.  Ex. 33 at 7–10 (Dkt. 74-4, *FG Hemisphere*, Civil Case No. 03-1314-RJL (D.D.C. Sept. 29, 2005)).  The Court granted a motion to compel responses to the discovery requests, incorporating minor modifications by the Plaintiff, and ultimately imposed sanctions against the DRC for its failure to comply with its discovery obligations.  *FG Hemisphere*, 603 F. Supp. 2d at 1 and 2–3.

Here, Plaintiffs' Discovery Requests cover quite similar subject matter, and are, if anything, narrower than those enforced by the Court in *FG Hemisphere*.  For example, Plaintiffs' Discovery Requests seek more limited categories of documents than those that were upheld in *FG Hemisphere*, which included requests relating to a broader range of property interests, including "all agreements . . . concerning exploration for and/or development or operation or production of any natural resources of the DRC."  Ex. 33 at 8.  In addition, Plaintiffs' Discovery Requests focus on information regarding Sudan's assets and commercial interests in only 17 countries, not globally.  Since the Plaintiffs' Discovery Requests are narrower here than in other post-judgment discovery requests enforced by the Court against a foreign sovereign, Sudan's objections on scope and burden cannot stand.

## II.   Plaintiffs Are Entitled to Discovery Regarding Sudan's Assets and Transactions in the United States, and the *Amduso* Production Does Not Suffice.

Sudan does not contest Plaintiffs' Discovery Requests as they relate to the United States, nor could it.  *See*, *e.g.*, Ex. 22 (Sudan's July 8, 2019 Letter) at 2 ███████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████; *see also Amduso*, 288 F. Supp. 3d at 95 (compelling Sudan to produce information regarding assets and transactions in the United States).  Despite this, the only responsive documents regarding U.S. assets and transactions that Sudan has produced are ██████ █████████████████████████████████████████████████████████ Sudan has not answered any of Plaintiffs' interrogatories.  *Id.* ¶ 9.

Sudan's responses to Plaintiffs' Discovery Requests regarding assets and transactions in the United States fall far short of meeting Sudan's discovery obligations.  *See* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond").  A "[l]itigant responding to discovery may not just 'sit on his hands.'"  *U.S. v. All Assets Held at Bank Julius Baer & Co., Ltd.*, Civil Case No. 04-798, 2018 WL 8867711, at *9 (D.D.C. Jan. 19, 2018).  Indeed, Rule 34 "requires the responding party to produce records that are in his 'possession, custody, *or control*,'" and Rule 33 "requires a responding party to 'compile information within his control' and 'provide all information available to him'" to answer interrogatories.  *Id.* (quoting Rule 34 (emphasis in original) and quoting *Huthnance v. Dist. of Columbia*, 255 F.R.D. 285, 292-93 (D.D.C. 2008)).  Sudan has failed to comply with both Rules 33 and 34, and cannot simply proffer the outdated and inadequate *Amduso* Production in lieu of satisfying its discovery obligations.

**A.      The *Amduso* Production Does Not Satisfy Plaintiffs' Discovery Requests.**

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████

The documents requested by Plaintiffs are materially different from what the Court ordered Sudan to provide in *Amduso*.  The Court's order in *Amduso* focused on (1) financial transactions with a nexus to the United States conducted by Sudan-owned or controlled banks, and (2) identification of Sudan's agencies and instrumentalities that conducted or plan to conduct business in the United States or with U.S. persons.  *See Amduso*, Dkt. 330 ¶ 1(c) and 1(d).  Here, Plaintiffs' document requests relating to assets in the United States target documents regarding (1) bank accounts, letters of credit, outstanding loans, and other *assets* in the U.S., held directly or indirectly by Sudan, as well as (2) information regarding Sudan's contracts that are performed in any part in the United States.  *See* Ex. 1 at 15–17.  In addition, the Plaintiffs' Discovery Requests seek documents for the time period 2017 through the present, ██████████████████████████████ ██████████████████████████████████.  Because the document requests in this case and *Amduso* are not coterminous, Sudan is obligated under Rule 34 to provide documents responsive to *Plaintiffs'* requests.  *All Assets*, 2018 WL 8867711, at *9.

████████████████████████████████████████████████does not respond to Plaintiffs' interrogatories, which seek specific information about Sudan's bank accounts, letters of credit, outstanding loans, other assets or property, and contractual relationships.  Rule 33 requires verified answers to each interrogatory, compiling all responsive information within Sudan's

control, and Sudan has failed altogether to provide verified interrogatory responses to Plaintiffs.[8]

*See All Assets*, 2018 WL 8867711, at *9; Fed. R. Civ. P. 33(b)(3).

### B.    The *Amduso* Production Is Itself the Result of A Patently Deficient Search for Responsive Documents.

The *Amduso* Production also does not satisfy Sudan's discovery obligations relating to

assets and transactions in the United States because it was itself the result of an obviously deficient

search for responsive documents.  Under Rule 34, "a party is obligated to make a reasonable effort

to search for and produce documents responsive to the opposing party's document requests."

*Moore v. Napolitano*, 723 F. Supp. 2d 167, 173 (D.D.C. 2010) (citing Fed. R. Civ. P. 26(g)

Advisory Comm. Notes (1983 Amendment)).   Where a party points to failures in a responding

party's search for documents, "it necessarily falls to the [responding party], the party with superior

knowledge of its own records, to show the reasonableness of its decisions" in conducting its search

for responsive documents.  *Id.*



---

[8]   Sudan's counsel has provided responsive information to Interrog. No. 7 (identifying Sudanese officials present in the United States), but Sudan has not provided any verified answers to this or any other interrogatory.  *See* Ex. 28 (Sudan's Aug. 28, 2019 Letter).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████

        ██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

**C.**   **The *Amduso* Production Is Long Outdated, and Sudan Has Not Produced any Supplemental Material.**

        ████████████████████████████████████████████ Sudan has not produced

anything to supplement the *Amduso* Production ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

15

██████████████████████████████████████████████████████████████████

████████████████████████

Unsurprisingly, ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Moreover, the April

2019 transition has not prevented Sudan from functioning: it has, for instance, remained able to execute a multimillion-dollar lobbying contract to influence U.S. officials and seek U.S. investment in a major oil deal. ███████████████████████████████████████████████

████████████████████ *See* Ex. 4 (Dickens & Madson (Canada) Inc., FARA Registration, June 17, 2019); *see also* Ex. 23 (Plaintiffs' July 19, 2019 Letter) at 2.  Sudan simply has not been willing to provide timely responses to Plaintiffs' Discovery Requests, even regarding information that Sudan admits is within the scope of permissible discovery.

For these reasons, Sudan's discovery responses—namely, the *Amduso* Production—are patently deficient, and Sudan should be compelled to provide full and complete responses to Plaintiffs' Discovery Requests regarding its assets and commercial activity in the United States, from January 1, 2017 to present.

## III.   Plaintiffs Are Entitled to Discovery Relating to Sudan's Assets outside of the United States.

While Sudan has simply failed to provide responsive information relating to its assets and commercial activity in the United States, Sudan objects to all discovery of its non-U.S. assets and transactions because, it claims, such information is irrelevant unless the Judgment can be enforced

in the foreign jurisdiction.  *See* Ex. 9 (Sudan's May 11, 2018 Letter) at 1.  This argument has no basis in law.

Plaintiffs are entitled to *discover* Sudan's assets and attempt to execute upon them to enforce the Judgment, no matter where they are located.  *See Credit Lyonnais*, 160 F.3d at 431 (Rule 69 presumes the ability to discovery all information relevant to tracing a judgment debtor's assets).  This includes discovery into both the "location" and "source" of a judgment debtor's assets.  *See GFL Advantage Fund*, 216 F.R.D. at 194.  Indeed, Sudan raised this same objection in *Amduso*, and the Court rejected it there, holding that "[d]istrict courts may order discovery related to assets abroad, even though plaintiffs may have to seek execution on those assets from a foreign court."  288 F. Supp. 3d at 97 (citing *EM Ltd. v. Republic of Arg.*, 695 F.3d 201, 208 (2d Cir. 2012)).  The Court stated specifically that plaintiffs can seek discovery "wider than the scope of what is ultimately attachable."  *Id.* at 96 n.4 (citing *NML Capital*, 573 U.S. at 144).

Here, Plaintiffs' Discovery Requests seek discovery relating to the location and source of Sudanese assets in only 17 targeted jurisdictions.  In initial negotiations with Sudan after the discovery requests were served, Sudan proposed, in May 2018, that rather than providing responsive documents, it would first determine whether it had any assets in the Listed Countries to disclose in the first instance.  ████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████  Sudan also reported to Plaintiffs three months

██████████████████████████████

██████████████████████████████

██████████████████████████████

████████████

Sudan's failure to produce discovery relating to its assets in the Listed Countries is a blatant effort to evade the Court's Judgment.  In the case of Sudan, a foreign sovereign seeking to *avoid* execution, it is critical for Plaintiffs to identify how Sudan is structuring its transactions outside of the United States.  In addition, the wind-up of a substantial government-owned company is exactly the kind of highly relevant information that Plaintiffs are entitled to discover in order to trace Sudan's assets available for potential execution.  Because Sudan likely relies on foreign financial institutions to provide the means for sophisticated financial transactions and likely relies on foreign companies to obtain many of the high-value goods that Sudan purchases (such as in the energy, transportation, technology, and communications sectors), Plaintiffs are entitled to obtain information regarding Sudan's assets and transactions in the Listed Countries and how, exactly, Sudan is moving its money around.  *See, e.g.*, *EM Ltd. v. Republic of Arg.*, 695 F.3d 201, 204–05 (2d Cir. 2012), *aff'd sub nom. Republic of Arg. v. NML Capital, Ltd*, 573 U.S. 134 (2014) (upholding a district court order that compelled compliance with subpoenas seeking documents about judgment debtor's assets "without territorial limitation"); *Credit Lyonnais*, 160 F.3d at 431 (reversing district court's denial of discovery aimed at tracing judgment debtor's assets); *Amduso*, 288 F. Supp. 3d at 97 ("District courts may order discovery related to assets abroad."); *FG Hemisphere*, 603 F. Supp. 2d at 1–2 (sanctioning foreign sovereign for failing to provide discovery regarding assets, globally).  Sudan *has* resources, but it is hiding them from Plaintiffs, and Sudan

should be ordered to provide responsive information relating to its assets and transactions outside of the United States.

**IV.    Plaintiffs Are Entitled to Discovery Relating to Assets Sudan Considers to Be "Military" or "Diplomatic" in Nature.**

Similarly, Sudan has refused discovery about assets or transactions in the Listed Countries that Sudan has unilaterally deemed "military" or "diplomatic" in nature, claiming that such assets are immune from attachment and are therefore irrelevant.  *See, e.g.*, Ex. 9 (Sudan's May 11, 2018 Letter) at 1–2.  Here again, Sudan misses the point: post-judgment discovery is not limited to assets and transactions that are demonstrably subject to execution under the FSIA.  *See Amduso*, 288 F. Supp. 3d at 96 n.4. (citing *NML Capital*, 573 U.S. at 144).  Sudan's assets and transactions that are military or diplomatic in nature remain *Sudan's* assets and transactions, and they are therefore relevant to Plaintiffs' efforts to trace and discover Sudan's assets for potential satisfaction of the Judgment.  *See supra*, Sections I and III.

Sudan claims that the Vienna Convention on Diplomatic Relations (the "Vienna Convention") shields this information from discovery.[9]  *See* Ex. 14 (Sudan's May 6, 2019 Letter) at 1.  The Vienna Convention protects the *records* of Sudan's diplomatic missions, including diplomatic correspondence in transit, but it does not restrict the entire subject matter of "diplomatic" assets or transactions from discovery.  *See* Vienna Convention on Diplomatic Relations, Art. 24, Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502 (entered into force in U.S. Dec. 13, 1972) ("The archives and documents of the mission shall be inviolable at any time and wherever they may be.").  To the extent Sudan maintains responsive documents that are not "the

---

9   Plaintiffs assume that Sudan is claiming protection under the Vienna Convention regarding only diplomatic assets and transactions.  The Vienna Convention does not provide any protections for military assets and related transactions.

archives and documents" of Sudan's diplomatic missions, then those records are not protected by the Vienna Convention, and Sudan's objection to searching such records should be overruled.

As noted above, Plaintiffs sought to narrow this dispute, as to both military and diplomatic assets, by allowing Sudan to log summary information that it was withholding on the basis that it was "military" or "diplomatic" in nature. *See* Ex. 12 (Plaintiffs' Apr. 22, 2019 Letter) at 2. Sudan rejected that proposal, and it refuses to provide any specific accounting of what it might be unilaterally categorizing as "military" or "diplomatic" in nature. *See* Ex. 14 (Sudan's May 6, 2019 Letter) at 1–2. The most Sudan has been willing to say is that ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

    ████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ Moreover, Sudan's refusal to provide any more detail about what it intends to withhold fails to provide the transparency required by the Federal Rules when a party is withholding documents on a claim of some privilege. *See* Fed. R. Civ. P. 26(b)(5)(A) (requiring express claim and accounting of documents withheld on a claim of privilege from discovery).

Sudan's insistence that it can unilaterally and en masse withhold responsive information that it considers "military" or "diplomatic" is plainly erroneous, and the Court should, respecting any limitations on discovery of the *records* of Sudan's diplomatic missions, compel Sudan to provide responsive documents and information regarding Sudan's assets and transactions that it deems military or diplomatic in nature.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its Motion to Compel Defendant Republic of Sudan to Produce Documents and Answer Interrogatories in Response to Plaintiffs' Discovery Requests.


Dated:  October 30, 2019                      Respectfully submitted,

                                              /s/ *Matthew D. McGill*
                                              Matthew D. McGill (Bar No. 481430)
                                              Noah P. Sullivan (Bar No. 1009659)
                                              GIBSON, DUNN & CRUTCHER LLP
                                              1050 Connecticut Avenue, N.W.
                                              Washington, DC 20036
                                              Telephone: 202.955.8500
                                              Facsimile: 202.530.9522
                                              mmcgill@gibsondunn.com
                                              nsullivan@gibsondunn.com

                                              Thomas Fortune Fay
                                              Caragh Fay
                                              FAY LAW GROUP, P.A.
                                              777 6th Street, N.W., Suite 410
                                              Washington, DC 20001
                                              (202) 589-1300
                                              thomasfay@aol.com
                                              caraghfay@gmail.com

                                              *Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 4th day of November, 2019, I electronically filed and therefore caused the foregoing redacted version of the Memorandum in Support of Plaintiffs' Motion to Compel Defendant Republic of Sudan to Produce Documents and Answer Interrogatories in Response to Plaintiffs' Discovery Requests to be served via the CM/ECF system in the United States District Court for the District of Columbia on all parties registered for CM/ECF in the above-captioned matter. No service is required on Defendant the Islamic Republic of Iran, which is in default for failing to appear. *See* Fed. R. Civ. P. 5(a)(2).

Dated: November 4, 2019                         /s/ *Matthew D. McGill*
                                                               Matthew D. McGill

22