UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES OWENS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>REPUBLIC OF SUDAN, et al.,<br><br>    Defendants. | Civil Action No. 01-2244 (JDB) |

### MEMORANDUM OPINION

Before the Court is plaintiffs' motion to compel post-judgment discovery from the Republic of Sudan ("Sudan") under Federal Rule of Civil Procedure 37. See Pls.' Mot. to Compel Def. Republic of Sudan to Produce Docs. & Answer Interrogs. in Response to Pls.' Discovery Requests ("Mot. to Compel") [ECF No. 438] at 1. Plaintiffs secured a $488 million judgment against defendants in 2014 and now seek a court order compelling Sudan to provide within 30 days full and complete responses to plaintiffs' pending discovery requests regarding Sudan's commercial assets and transactions in the United States and 16 additional countries. See id.; Mem. in Supp. of Pls.' Mot. to Compel ("Pls.' Br.") [ECF No. 440] at 2. Sudan opposes the motion. See The Republic of Sudan's Mem. in Opp'n to Pls.' Mot. to Compel ("Opp'n Br.") [ECF No. 443] at 1.

For the reasons explained below, the Court will grant the motion to compel, but will wait to set a specific timeline for production at the status conference set for August 3, 2020.

### BACKGROUND

This motion to compel follows the Court's 2014 order awarding plaintiffs a $488 million judgment against Sudan for its involvement in the 1998 al Qaeda bombings of U.S. embassies in Tanzania and Kenya. See March 28, 2014 Order [ECF No. 303]; March 28, 2014 Mem. Op. [ECF

1

No. 300] at 3, aff'd in part, question certified sub nom. Owens v. Republic of Sudan, 864 F.3d 751 (D.C. Cir. 2017), certified question answered, 194 A.3d 38 (D.C. 2018), aff'd sub nom. Owens v. Republic of Sudan, 924 F.3d 1256 (D.C. Cir. 2019), and vacated and remanded in part sub nom. Opati v. Republic of Sudan, 140 S. Ct. 1601 (2020); Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 149–51 (D.D.C. 2011). Plaintiffs—victims of the terror attacks and their relatives—now seek post-judgment discovery so that they can collect on their judgment under Federal Rule of Civil Procedure 69. See Pls.' Br. at 8–9. So far, in response to plaintiffs' discovery requests, Sudan has provided little more than the information that it previously produced in a separate, but related lawsuit—Amduso v. Republic of Sudan. See id. at 6–7; see also Amduso v. Republic of Sudan, 288 F. Supp. 3d 90, 94 (D.D.C. 2017) (describing the four categories of information sought in Amduso). Plaintiffs contend that the documents produced in Amduso (the "Amduso Documents") are wholly insufficient in this case because they are outdated, do not contain all information that plaintiffs seek, and were compiled based on flawed methodology to begin with. Pls.' Br. at 11–16. Plaintiffs move to compel Sudan to provide all relevant information that does not appear in the Amduso Documents, including information concerning Sudan's (and its agencies and instrumentalities') assets and transactions in the United States and 16 other countries. Id. at 3.

On June 3, 2020 the Court requested that the parties provide an update on the status of their discovery efforts. Minute Order, June 3, 2020. Plaintiffs, who continue to seek a motion to compel, informed the Court that other than a supplemental filing that did not provide any additional document production or answers to plaintiffs' interrogatories, Sudan has not produced any new information. See Status Update Regarding Pls.' Pending Mot. to Compel ("Pls.' Status Update") [ECF No. 454] at 1–2. Sudan responded that, in December, it provided plaintiffs with a report

disclosing that a number of its ministries, agencies, and instrumentalities lacked potentially attachable assets. Sudan's Status Report [ECF No. 455] at 2. Sudan also informed the Court that it is approaching an agreement with the United States to resolve all cases concerning the 1998 bombings through compensation payments and, as a result, "has not recently exchanged any further communications with Plaintiffs regarding the discovery dispute pending before this Court." Id. at 2.

## LEGAL STANDARD

"The rules governing discovery in postjudgment execution proceedings are quite permissive." Republic of Argentina v. NML Capital, Ltd., 573 U.S. 134, 138 (2014). "As a general rule, legal victors may engage in broad post-judgment discovery." Amduso, 288 F. Supp. 3d at 94. A judgment creditor, "[i]n aid of the judgment or execution, . . . may obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules of Civil Procedure]." Fed. R. Civ. P. 69. The Federal Rules allow for discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

If the producing party "withholds information otherwise discoverable by claiming that the information is privileged," the party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Indeed, Rule 33 dictates that "[t]he grounds for objecting to

an interrogatory must be stated with specificity," Fed. R. Civ. P. 33(b)(4), and Rule 34 states that "[f]or each item or category, the response must . . . state with specificity the grounds for objecting to the request," Fed. R. Civ. P. 34(b)(2)(B).

Under Rule 37 "a party seeking discovery through an interrogatory under Rule 33 [or] the production of documents under Rule 34 . . . and who believes that the opposing party has failed to meet its obligations under the relevant Rules, may—after conferring in good faith with the opposing party—seek to compel a response." Breiterman v. U.S. Capitol Police, 324 F.R.D. 24, 27 (D.D.C. 2018) (citing Fed. R. Civ. P. 37(a)(1), 37(a)(3)(B)(i), (iii)–(iv)).  While the 30-day response period imposed by Rules 26, 33, and 34 can be extended, a motion to compel under Rule 37 may be appropriate when parties do not submit their answers and objections in a timely manner. See Cunningham v. Hamilton Cty., 527 U.S. 198, 208 (1999) (stating that "Rule 37(a) . . . was designed to protect courts and opposing parties from delaying or harassing tactics during the discovery process.").  As "[t]he party moving to compel," plaintiffs carry the burden of demonstrating that Sudan has not fully responded to discovery requests. Equal Rights Ctr. v. Post Properties, Inc., 246 F.R.D. 29, 32 (D.D.C. 2007).

## ANALYSIS

Plaintiffs move to compel Sudan to provide full and complete responses to pending discovery requests because, despite the two and a half years that have passed since they served Sudan with their discovery requests, Sudan has yet to answer any interrogatories and has produced little more than the dated Amduso Documents that, by Sudan's own admission, do not satisfy plaintiffs' discovery requests. See Pls.' Br. at 1–2; Pls.' Status Update at 2; Opp'n Br. at 8-9.  In response, Sudan raises several objections.  First, Sudan claims that it is working to comply with plaintiffs' discovery requests for assets in the United States and that the Court's intervention in the

discovery process—at this stage—is premature. See Opp'n Br. at 6–7. Second, Sudan contends that it is not obligated to reveal information about any of its foreign-based assets and activities as they are immune from attachment or execution under the Foreign Sovereign Immunities Act ("FSIA"). Id. at 10–11. Third, Sudan claims that it cannot be required to disclose information about its military and diplomatic assets because they are also immune from execution under the FSIA and are protected from "search, requisition, attachment or execution" under the Vienna Convention on Diplomatic Relations ("VCDR"). Opp'n Br. at 14 (quoting VCDR, art. 23, April 18, 1961, 23 U.S.T. 3227). None of these arguments, however, excuses Sudan's failure to comply with plaintiffs' pending discovery requests.

### 1. Compelling Discovery as to Information About Assets in the United States

Sudan acknowledges that the Amduso Documents do not fully satisfy its discovery responsibilities, but insists that it is making sincere efforts to comply with plaintiffs' discovery requests by, for example, appointing "representatives from the Central Bank [of Sudan] to assist with supplementing the Amduso production."[1] Opp'n Br. at 6–7, 9. In December 2019, Sudan did submit a report from representatives at the Central Bank disclosing that eleven entities (i.e., ministries, agencies, or instrumentalities) had confirmed that they did not possess any non-diplomatic, nonmilitary assets in the United States, and an additional two entities proclaimed that they did not possess such assets in any of the 16 other countries listed in plaintiffs' discovery

---

[1] At this time, the Court will not opine on the sufficiency of the Amduso Documents, including the extent to which they satisfy plaintiffs' discovery requests in this action or whether they were the product of an adequate search. Sudan has said that "to the extent that the Amduso Order did not capture all of the assets that Sudan might possess in the United States as requested by Plaintiffs here, Sudan has instructions to identify such information." Opp'n Br. at 7. Thus, Sudan may produce additional information that would render these concerns moot; Sudan is not claiming that it has fully complied with plaintiffs' discovery requests regarding its assets in the United States. Additionally, while plaintiffs challenge the adequacy of the Amduso search, see Pls.' Br. at 13–16, it is unclear what search process is taking place now in Owens, see id. at 15 ("When asked whether Sudan was replicating the same process for Owens that it did in Amduso, Sudan's counsel could only respond, 'probably.'"). The parties should, however, be prepared to discuss and agree to a document search process at the upcoming status conference.

requests. Sudan's Status Report at 2. Sudan had previously disclosed that another 36 of its entities denied possessing assets in any of the 17 countries plaintiffs inquired about. See Opp'n Br. at 13.

Plaintiffs argue that Sudan's response has been unreasonably delayed and that it has provided plaintiffs with very little new information over the past two years. See Pls.' Br. at 7; see also Reply in Support of Pls.' Mot. to Compel ("Pls.' Reply") [ECF No. 446] at 1. Sudan claims that the delay stems, at least in part, from the country's recent political turmoil and from plaintiffs' own delay in pursuing the protective order on which Sudan predicated its compliance. Opp'n Br. at 2, 5. Plaintiffs reply that Sudan continued to engage in other complicated international transactions throughout the transition period. See Pls.' Reply at 6–7 (reporting that "Sudan . . . has continued to pursue its numerous appeals in the United States courts, executed a multimillion-dollar contract to influence United States officials . . . and, now, is orchestrating a massive international bailout package which includes at least €466 million in support grants and potential additional support from the United Kingdom, Kingdom of Saudi Arabia, and Germany, among others").

The Court recognizes some delay may have been justified in light of Sudan's period of significant unrest and the transition of power, but concludes that Sudan is not diligently complying with plaintiffs' discovery requests regarding Sudan's assets in the United States. Not only has there been a two-and-a-half-year delay, but Sudan admits in its status report that it has recently stopped communicating with plaintiffs regarding the ongoing discovery dispute even though no stay has been entered in this case.[2] See Sudan's Status Report at 1–2. Faced with a discovery request, a party "may not just sit on his hands," but instead must "compile information within his

---

[2] The Court is also unpersuaded by Sudan's argument that discovery was delayed because the protective order was not entered until April 2019. See Opp'n Br. at 2. Sudan could have at least started collecting information in response to the pending discovery requests before the protective order was entered.

control and provide all information available to him." See United States v. All Assets Held at Bank Julius Baer & Co., 309 F.R.D. 1, 14 (D.D.C. 2015) (internal quotation marks omitted). While Sudan has indicated that it intends to provide plaintiffs with additional discovery, Opp'n Br. at 6–9, it cannot replace actual compliance with "a response . . . which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner." Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 173 F.R.D. 651, 656 (D. Md. 1997).

Sudan also argues, in its defense, that it has been unable to comply fully with plaintiffs' discovery requests regarding its assets in the United States because "Sudan does not have a central registry containing information on assets of its ministries and separately-owned and -controlled agencies and instrumentalities," and that it cannot order its "independent" agencies to cooperate with the discovery process. Opp'n Br. at 4, 9. However, as this Court has previously held, "[t]he Federal Rules . . . allow plaintiffs to request discovery from Sudan regarding recent and planned transactions by Sudan's agencies and instrumentalities." Amduso, 288 F. Supp. 3d at 95. "Sudan cannot complain about requests for discovery from any political subdivisions or government agencies that are not separate juridical entities, or with whom Sudan enjoys a principal-agent relationship, since these are considered to be part of the government of Sudan itself." Id. at 95–96 (citing McKesson Corp. v. Islamic Republic of Iran, 185 F.R.D. 70, 78 (D.D.C. 1999)). "As to any other Sudanese instrumentalities . . . [i]f Sudan owns or controls a particular entity, any documents in that entity's possession are likely also within Sudan's control and therefore subject to discovery." Id. at 96 (citing cases). Here, as in Amduso, "plaintiffs ask Sudan only for any information it might have in its own 'possession, custody, or control' regarding those entities' recent transactions." Id.; see Ex. 1 to Pls.' Br. [ECF No. 441-2 ] ¶ 4.

Indeed, under Rules 33 and 34, a party against whom discovery is sought is under an obligation to actively search for relevant information it may not be aware of but is entitled to access.  See All Assets, 309 F.R.D. at 7 (quoting Huthnance v. District of Columbia, 255 F.R.D. 285, 292–93 (D.D.C. 2008)); see also Jay E. Greig and Jeffrey S. Kinsler, Handbook of Federal Civil Discovery and Disclosure § 8:17, at 479 (2010) ("A party cannot limit its answer to matter within its own knowledge and ignore information readily available to it or under its control. . . . This may require a party to seek information from non-parties in order to answer the interrogatory."); Engel v. Town of Roseland, No. 06–CIV–430, 2007 WL 2903196, at *4 (N.D. Ind. Oct. 1, 2007) ("[W]hen a party has a right to obtain a copy of a document, it controls that document and must produce it when requested to do so under Rule 34.").

Sudan, relying on United States v. Am. Tel. & Tel. Co., ("Am. Tel.") 461 F. Supp. 1314 (D.D.C. 1978), argues that "Sudan has no right, just like the United States, to demand that independent agencies and instrumentalities comply with U.S. discovery requests in a case in which they are not parties."  Opp'n Br. at 9.  But Am. Tel. did not determine that, as a principle, the United States could not request documents from independent agencies; instead, the court held that (a) "a quasi-legislative agency" does not automatically turn into an opposing party in a case involving a lawsuit by or against the U.S. government, and (b) as a matter of fact, the Department of Justice and the Executive Branch do not have direct authority over the Federal Communications Commission and thus cannot control its records.  See 461 F. Supp. at 1335–36.  Absent a specific factual showing that Sudan has no control over the records of certain agencies and instrumentalities, the court's decision in Am. Tel. provides Sudan little cover.

Therefore, despite the political unrest in Sudan, the delayed entry of a protective order, and the fact that plaintiffs' discovery requests seek information from Sudan's agencies and

instrumentalities, the Court concludes that Sudan's failure to respond to plaintiffs' discovery requests regarding its assets in the United States is unjustified. Court intervention, through a motion to compel, is thus warranted.

### 2. Discovery Regarding Sudan's Assets Abroad

Sudan next claims that plaintiffs are not entitled to discovery relating to Sudan's assets outside of the United States because plaintiffs cannot execute judgments against such assets. Opp'n Br. at 10–11. But whether an asset is subject to execution does not determine whether information about that asset is discoverable. See NML Capital, 573 U.S. at 144; Amduso, 288 F. Supp. 3d at 97–98. In cases like this one, when it's unclear "what property [a state] has and where it is, let alone whether it is executable under the relevant jurisdiction's law," NML Capital, 573 U.S. at 144, "plaintiffs can seek discovery wider than the scope of what is ultimately attachable," Amduso, 288 F. Supp. 3d at 96 n.4. The FSIA has no "provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." NML Capital, 573 U.S at 142. Indeed,

> [w]hatever the FSIA ultimately allows plaintiffs to attach . . . it is not 'unusual for the judgment creditor to seek disclosure related to assets held outside the jurisdiction of the court where the discovery request is made.' . . . District courts may order discovery related to assets abroad, even though plaintiffs may have to seek execution on those assets from a foreign court.

Amduso, 288 F. Supp. 3d at 97 (quoting EM Ltd. v. Republic of Argentina, 695 F.3d 201, 208 (2d Cir. 2012), aff'd sub nom. NML Capital, 573 U.S. 134 (2014)).

In fact, "the presumption should be in favor of full discovery of any matters arguably related to [the creditor's] efforts to trace [the debtor's] assets and otherwise to enforce its judgment." Credit Lyonnais, S.A. v. SGC Int'l, Inc., 160 F.3d 428, 431 (8th Cir. 1998). Such related matters include not only executable assets, but also "information relevant to the existence

or transfer of the defendants' assets." Haiying Xi v. Shengchun Lu, 804 F. App'x 170, 174 (3d Cir. 2020) (citing 12 Charles A. Wright, Arthur R. Miller et al., Federal Practice & Procedure § 3014 (3d ed. 2019)). Such information includes both "(1) the location of the judgment debtor's assets which would satisfy the judgment and (2) the source of those assets." GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 194 (D.D.C. 2003).

Of course, relevance is not the only consideration. Plaintiffs' discovery requests must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While the discovery here is indeed broader than the corresponding request in Amduso, plaintiffs' discovery requests nonetheless meet the proportionality requirement. First, like in Amduso, "the issue in this case— payment of a judgment for involvement in destructive acts of terrorism—is of great importance"; second, although Sudan's debt to the plaintiffs in this case is smaller than the debt it owed to the plaintiffs in Amduso, the "amount in controversy"—$488 million—is still very large; third, "Sudan still has far greater access to its own history of financial transactions than plaintiffs do"; fourth, "Sudan, as a sovereign state, has significantly greater resources than plaintiffs do"; and fifth, given the limited information regarding Sudan's potentially attachable assets produced thus far, further discovery "is vital to determining whether plaintiffs can collect on their judgment." Amduso, 288 F. Supp. 3d at 98.

As to the last proportionality consideration of Rule 26(b)(1), namely whether "the burden on Sudan to comply is outweighed by the benefit to plaintiffs' effort to obtain relief," id., the Court recognizes the breadth of plaintiffs' discovery requests, which seek information about Sudan's (and its agencies and instrumentalities') bank accounts and transaction history, commercial or standby letters of credit, outstanding loans, and assets or property of any kind in the United States and in 16 additional countries. See Pls.' Br. at 3; Mot. to Compel at Appendix A. However, such

broad discovery is often necessary in the post-judgment discovery context.  For example, in FG Hemisphere Assocs., LLC v. Democratic Republic of Congo, 603 F. Supp. 2d 1 (D.D.C. 2009), aff'd, 637 F.3d 373 (D.C. Cir. 2011), judgment creditors of the Democratic Republic of Congo (the "DRC") requested very broad discovery including documents relating to "all real property owned by the DRC outside the territorial limits of the DRC," "all accounts at any banks or financial institutions" outside the DRC, "all accounts at any brokerage houses or other financial institutions" outside the DRC, and "any and all existing contract(s)" between the DRC and an entity outside the DRC.  See Ex. 33 to Pls.' Br. [ECF No. 441-34] at 6–10.  Despite the broad scope of the requests, the court entered an order compelling the DRC to respond to plaintiffs' discovery requests with minor modifications that the parties had agreed to in subsequent correspondence.  See FG Hemisphere Assocs., LLC, 603 F. Supp. 2d at 1; Sept. 7, 2005 Letter, FG Hemisphere Assocs., LLC v. Democratic Republic of Congo, No. 03-1314 (D.D.C. Sept. 29, 2005) [ECF No. 74-6] at 1–6.

Sudan maintains that FG Hemisphere is distinguishable from this case because there the defendant "did not raise the same territorial and relevance arguments that Sudan raises here." See Opp'n Br. at 12.  The Court, however, has already addressed Sudan's territorial and relevance arguments.  FG Hemisphere is instructive as to whether the scope of the discovery requests are unduly burdensome, which is an argument that DRC made in opposition to the motion to compel.  See Def. the Democratic Republic of Congo's Response to Pl. FG Hemisphere Assocs., LLC's Mot. to Compel, FG Hemisphere Assocs. LLC, No. 03-1314 (D.D.C. Sept. 29, 2005) [ECF No. 75] at 2.

Sudan also asserts that FG Hemisphere predated the 2015 revision of Rule 26, see Opp'n Br. at 12, but the 2015 revision "d[id] not change the existing responsibilities of the court and the

11

parties to consider proportionality," see Fed. R. Civ. P. 26, Advisory Committee note; see also BuzzFeed, Inc. v. U.S. Dep't of Justice, 318 F. Supp. 3d 347, 358 n.6 (D.D.C. 2018) (noting "the 2015 amendment—which moved the concept of proportionality from Rule 26(b)(2) to Rule 26(b)(1)—did not meaningfully change the court's obligation to limit discovery where the 'burden or expense of the proposed discovery outweighs its likely benefit'").

Finally, Sudan argues that "FG Hemisphere . . . was decided before NML, in which the Supreme Court posited that discovery that would not lead to attachable assets might not be 'relevant.'" Opp'n Br. at 12 (quoting NML Capital, 573 U.S. at 144). As the Court has already explained, however, the Supreme Court in NML Capital recognized that "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive," and discovery is not limited to attachable assets. See 573 U.S. at 138, 144. Thus, the decision in FG Hemisphere remains instructive when it comes to assessing the scope of plaintiffs' discovery requests.

Accordingly, the Court concludes that plaintiffs' discovery requests regarding the assets located outside the United States are "[i]n aid of the judgment or execution," Fed. R. Civ. P. 69(a)(2), as well as relevant and proportional to the needs of the case, Fed. R. Civ. P. 26. Sudan must therefore comply with these requests.

### 3. Discovery Regarding Sudan's Military and Diplomatic Assets

Contrary to Sudan's contention, military and diplomatic assets are not automatically immune from discovery. As previously discussed, even if Sudan's assets are not unequivocally subject to execution, they can still be subject to discovery. See Amduso, 288 F. Supp. 3d at 96 n.4 (citing NML Capital, 573 U.S. at 144). Sudan claims that "[d]iplomatic and military assets are immune from . . . requisition or execution under the [VCDR]," Opp'n Br. at 14 (citing 23 U.S.T. 3227, T.I.A.S. No. 7502 (entered into force in U.S. Dec. 13, 1972)), but the VCDR does not

provide diplomatic accounts immunity from discovery, see Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 924 F. Supp. 2d 508, 526 (S.D.N.Y. 2013).

Moreover, discovery could reveal whether any of Sudan's military and diplomatic assets fall under one of the FSIA's exceptions to immunity from attachment or execution. See, e.g., Liberian E. Timber Corp. v. Gov't of the Republic of Liberia, 659 F. Supp. 606, 610 (D.D.C. 1987) (assessing whether embassy bank accounts were used primarily for diplomatic functions or commercial activity to determine whether the accounts are immune from attachment under the VCDR); Thai Lao Lignite, 924 F. Supp. 2d at 527 (noting that "[a]lthough the immunity of funds in 'mixed use' accounts (where some funds are directed towards diplomatic purposes and others used for commercial transactions) is unclear, several decisions have found such funds to be attachable").

Finally, if Sudan believes that there are specific records or assets that are "privileged" or "inviolable" then it "should present its objections to the district court." Aurelius Capital Master, Ltd. v. Republic of Argentina, 589 F. App'x 16, 17 (2d Cir. 2014). "At this juncture, it is entirely speculative whether documents [Sudan] regards as privileged or inviolable will be responsive to [plaintiffs'] discovery requests and, if so, whether [plaintiffs] will persist in demanding such documents in the face of particularized claims of privilege or inviolability." Id. at 17–18. Again, if Sudan seeks to assert a privilege, it must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

## CONCLUSION

For the above reasons, plaintiffs' motion to compel discovery is granted. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 17, 2020